**In re CHERRY POND COAL COMPANY, Debtor.**

**ARMCO, INC., Plaintiff,**

**v.**

**CHERRY POND COAL COMPANY and Kessler Coals, Inc., Defendants.**

**Bankruptcy No. 81–20504.**

**Civ. A. No. 82–2317.**

United States District Court, S. D. West Virginia, Charleston Division.

July 22, 1982.

---

Charles L. Woody, Charleston, W. Va., for plaintiff.

Thomas R. Goodwin, Charleston, W. Va., for defendants.

## ORDER

COPENHAVER, District Judge.

In this case governed by the Bankruptcy Reform Act of 1978,[1] plaintiff Armco, Inc. filed its complaint in bankruptcy court seeking injunctive relief against defendants Cherry Pond Coal Company, a Chapter 11 debtor, and Kessler Coals, Inc. Armco seeks to restrain Kessler from mining coal on Armco property and to recover compensatory damages for coal previously removed, all of which Kessler claims a right to mine under a contract with Cherry Pond.

The bankruptcy judge, concluding under *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), and *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), that he was without jurisdiction to decide the issues as against Kessler, ordered the transfer of this adversary proceeding to the district court.[2]

The four-member plurality opinion in *Northern Pipeline* by Justice Brennan, the judgment of which was concurred in as set forth in the separate opinion of Justice Rehnquist, who was joined by Justice O'Connor, decreed as follows:

> We conclude that § 241(a) of the Bankruptcy Act of 1978 has impermissibly removed most, if not all, of "the essential attributes of the judicial power" from the Art. III district court, and has vested those attributes in a non-Art. III adjunct. Such a grant of jurisdiction cannot be sustained as an exercise of Congress' power to create adjuncts to Art. III courts.

—— U.S. at ——, 102 S.Ct. at 2879–80.

Section 241(a) contains the jurisdictional grant to the bankruptcy court under the Bankruptcy Reform Act. It confers, *inter alia,* original and exclusive jurisdiction of all cases under the Act and original though not exclusive jurisdiction of all civil proceedings arising under the Act or arising in or related to cases under the Act.[3] 28

1. Pub. L. 95–598, 92 Stat. 2549.

2. The bankruptcy judge appears to have acted sua sponte. The record does not indicate that an objection to jurisdiction was made. Cf. Rule 915(b) of the Rules of Bankruptcy Procedure.

3. A "civil proceeding" or lawsuit is to be distinguished from the entire bankruptcy "case" in which it arises or to which it is related.

U.S.C. § 1471 *et seq.* While recognizing that *Northern Pipeline* dealt with but one type of civil proceeding arising in or related to a bankruptcy case, the Court in effect held, by a six to three margin, that the broad jurisdictional grant of § 241(a) was not severable. —— U.S. at —— n.40, ——, 102 S.Ct. at 2879 n.40, 2880.

The Court then tempered the immediate impact of its decision as follows:

> Having concluded that the broad grant of jurisdiction to the bankruptcy courts contained in § 241(a) is unconstitutional, we ... hold ... that our decision today shall apply only prospectively.

> The judgment of the District Court is affirmed. However, we stay our judgment until October 4, 1982. This limited stay will afford Congress an opportunity to reconstitute the bankruptcy courts or to adopt other valid means of adjudication, without impairing the interim administration of the bankruptcy laws.

—— U.S. at ——, 102 S.Ct. at 2879–80. The *Northern Pipeline* decision thus validated the otherwise proper actions and judgments of the bankruptcy courts during the nearly three years that have elapsed under the Bankruptcy Reform Act down to its decision on June 28, 1982. By staying its judgment until October 4, 1982, the Court has extended this amnesty for some three additional months in order to afford Congress sufficient time to respond in the wake of the Court's decision.

Nothing in the bare language of *Northern Pipeline* purports to restrict the extent to which a bankruptcy judge may exercise the pervasive grant of jurisdiction under section 241(a) during the interim period ending October 4, 1982. The bankruptcy judge, noting the Supreme Court's citation of *Buckley v. Valeo* as precedent for its stay in *Northern Pipeline*, relies upon statements in the *Buckley* opinion 424 U.S. at pages 142–43, 96 S.Ct. at 693, quoted below, as the basis for his conclusion that a bankruptcy judge must be deemed deprived during the interim period of plenary jurisdiction, such as the action against Kessler, at least in the absence of Kessler's consent. It

is respectfully suggested that such a view stems from a misreading of *Buckley* by failing to take due note that *Buckley* dealt not only with the question of the constitutional validity of the tribunal created to exercise a given power, as in *Northern Pipeline*, but also with the issue of the constitutionality of the power itself. When the quoted language from *Buckley* is considered in this light, it is seen that *Buckley* does not lend support to the conclusion that the jurisdiction of the bankruptcy court during the interim period has somehow been redefined and limited by the Court.

*Buckley* held that the appointment by the legislative branch of a majority of the voting members of the Federal Election Commission under the Federal Election Campaign Act of 1971 contravened the doctrine of separation of powers as embodied in the Appointments Clause, Art. II, § 2, cl. 2, of the United States Constitution. Like the non-Art. III bankruptcy judge in *Northern Pipeline*, the Commission as so constituted was not able to exercise certain of the powers conferred upon it. The Court in *Buckley* also dealt with the constitutional validity of other provisions of the Federal Election Campaign Act. In doing so, the Court decreed that while the Act's limitations on campaign contributions were permissible, certain of the Act's limitations on campaign expenditures, such as a ceiling on a candidate's expenditures from his own personal funds, were in violation of First Amendment protections. The Court, nevertheless, accorded *de facto* validity to past acts of the Commission and stayed its judgment for an additional thirty days, as set forth in the following passage:

> It is also our view that the Commission's inability to exercise certain powers because of the method by which its members have been selected should not affect the validity of the Commission's administrative actions and determinations to this date, including its administration of those provisions, upheld today, authorizing the public financing of federal elections. The past acts of the Commission are therefore accorded *de facto* validity, just as we

have recognized should be the case with respect to legislative acts performed by legislators held to have been elected in accordance with an unconstitutional apportionment plan. We also draw on the Court's practice in the apportionment and voting rights cases and stay, for a period not to exceed 30 days, the Court's judgment insofar as it affects the authority of the Commission to exercise the duties and powers granted it under the Act. This limited stay will afford Congress an opportunity to reconstitute the Commission by law or to adopt other valid enforcement mechanisms without interrupting enforcement of the provisions the Court sustains, allowing the present Commission in the interim to function *de facto* in accordance with the substantive provisions of the Act.

424 U.S. 142–43, 96 S.Ct. at 693 [citations omitted].

In staying its judgment for thirty days, the Court in *Buckley* did so in order to permit the improperly constituted Commission to continue for a limited time to exercise the powers conferred upon it except for those powers which the Court found per se unconstitutional. Unlike *Buckley*, the Court in *Northern Pipeline* did not deal with the question of whether the powers to be exercised by bankruptcy judges under the Bankruptcy Reform Act of 1978 were in and of themselves unconstitutional. Rather, the Court simply addressed the constitutional necessity that federal judicial power of the kind required to resolve the plenary action as presented in *Northern Pipeline* be exercised only by Art. III judges.

4. The bankruptcy court is thus enabled to go forward with both the temporary restraining order and the preliminary injunctive relief now being sought in this case. It is suggested that the bankruptcy court, whether acting in this case or others, should undertake to conclude by October 4, 1982, all those adversary proceedings which are beyond the traditional summary jurisdiction of the court, as that concept was developed under the Bankruptcy Act of 1898, as amended, and which can reasonably be readied for decision before expiration of the stay, whether commenced before or after the date of the decision in *Northern Pipeline*.

Although section 404(a) of the Bankruptcy Reform Act of 1978 continues in existence until

It is concluded that the stay in *Northern Pipeline* until October 4, 1982, is not qualified by any limiting language in the Supreme Court's opinion. Indeed, the very purpose of the stay is to avoid "impairing the interim administration of the bankruptcy laws" while Congress is afforded an opportunity to reconstitute the bankruptcy courts or adopt other means of adjudication. Thus, the bankruptcy judge in this case is not confined, as suggested by him, to the exercise of summary jurisdiction alone during the interim period ending October 4, 1982.

This case is returned to the docket of the bankruptcy judge for such further proceedings as may be appropriate.[4]

It is so ORDERED.

March 31, 1984, the United States district courts as courts of bankruptcy (as defined under section 1(10) and as created under section 2(a) of the Bankruptcy Act of 1898, as amended), it appears that the bankruptcy courts are without jurisdiction to act after October 4, 1982. It thus seems reasonable to expect that Congress would in any event take timely steps to make available at least summary jurisdiction to the bankruptcy courts after October 4, 1982. By disposing of adversary proceedings which extend beyond the traditional summary jurisdiction of the court during the interim, the bankruptcy court will have avoided the confusion, waste and delay that may otherwise envelop the plenary proceedings coming before it.