**Paul H. ANDERSON, Jr., Trustee, Plaintiff,**

**v.**

**CBS, INC., d/b/a CBS Records, Defendant.**

**Bankruptcy No. 81–03892A.**
**Adv. No. 82–1412A.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Oct. 1, 1982.

Paul H. Anderson, Mitchell, Clarke, Pate, Anderson & Wimberly, Atlanta, Ga., for plaintiff.

Frank Wilensky, Macey & Zusmann, Atlanta, Ga., for defendant. '

WILLIAM L. NORTON, Jr., Bankruptcy Judge.

Defendants in numerous adversary proceedings have filed Motions to Dismiss alleging that this court lacks subject matter jurisdiction because of the decision of the Supreme Court in *Northern Pipeline Construction Company v. Marathon Pipe Line Company,* U.S. Supreme Court Case Nos. 81–150 and 81–546; —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598; 9 B.C.D. 67; 67 CCH Bankr.Rep. § 68,698, p. 80,785 (1982). Each defendant contends that the exercise of subject matter jurisdiction by this court in such adversary proceeding is unconstitu-

tional. There have been an epidemic of such motions by defendants, including the U.S. Attorney.[1] This opinion and order is applicable and entered as to all such pending motions before the undersigned. The proceedings include claims under 11 U.S.C. § 547 for preference, claims for relief from stay, adequate protection, avoidance of liens, recovery of property, sale of property free and clear of liens, breach of contract, contract fraud and breach of warranty.

In support of the motion to dismiss, the accumulation of arguments can be summerized as follows:

(1) The United States Supreme Court does not have the authority to stay the effects of a judgment finding a statute to be unconstitutional as in *Northern Pipeline*.

(2) The stay of judgment issued by the Supreme Court in *Northern Pipeline* is limited in scope to prohibit jurisdiction over only state common law disputes; and, as a

1. Disappointingly, the respected office of the Attorney General of the United States is in the unenviable position of having been on all sides of the issues under consideration, usually, and at different times, the losing and wrong side. This recent paradox is in sharp contrast to the persuasive and effective leadership of the notable Memorandum of Solicitor General Thatcher (published in Congressional Record January 28, 1932 at page 2912) (reprinted at page 322–334, Serial No. 27, Supplemental Appendix Part I, Hearings, Subcommittee on Civil and Constitutional Rights of the Committee on the Judiciary, House of Representatives, 94th Cong. 1st and 2nd Sessions on HR 31 and HR 32, Bankruptcy Act Revision; excerpts of the Memorandum are included in several Reports of House and Senate Judiciary Committees' reference other bankruptcy bills during the 1930's: See Serial 27, Supplemental Appendix, Part I, *supra,* pages 307, 374, 459, 466, 521, 1126) which correctly and impressively analyzed prior court decisions and predicted constitutional the congressional bill which produced the Corporation Reorganization Act of 1934 and the several debtor rehabilitation acts (e.g. Frazier-Lemke Acts; Chapters 10, 11, 12 and 13 of Chandler Act of 1938.) With the same jurisdiction, venue and judicial powers as § 241(a) of the Reform Act, (i.e.: 28 U.S.C. § 1471, a letter on HR 6, HR 7330, HR 8201 by the Office of Legislative Affairs of the U.S. Attorney General indicated that the exercise of such broad jurisdiction by a non-Article III judge would be unconstitutional. H.Rep. 95–595, *supra,* (1977), p. 38, fn. 251: H. Hearings, Dec. 12, 13, 14, Serial 31, infra. P. 216, 232–33). Later, on December 14, 1977, the Attorney General testified that § 241(a) of then pending HR 8200 (the successor to HR 6 and HR 7330) conferred more civil jurisdiction and venue on the Bankruptcy Court than possessed by the District Court. (House Hearings, December 12, 13, 14, 1977, Serial No. 36, *infra* p. 217, 218). Nevertheless, he opposed the creation of an Article III court because he opposed lifetime judgeships for the Bankruptcy Court. Before the Supreme Court in *Northern Pipeline,* the Attorney General argued constitutionality of the Bankruptcy Court which was created by the Act of 1978 with that same § 241(a) jurisdiction. More recently, at hearings before the House and Senate Judiciary Committees during the week of July 19, 1982, representatives of the U.S. Attorney General declined to express an opinion on the effect of the *Northern Pipeline* decision on the structure and composition of suggested reconstituted Bankruptcy Courts which might pass constitutional muster. The Attorney General declined to support the Article III Bankruptcy Court then under consideration by the House Judiciary Committee. Excerpts of reports of the hearings indicate that the Attorney General representatives advised the members of the congressional committees that they could not determine the meaning of *Northern Pipeline* on constitutional alternatives and make recommendations for at least several more weeks, i.e.: presumably after September, 1982. (See 9 BCD, Issue 4, p. A25. The remarks of the Assistant Attorney General to the House Committee indicate similar ambivalence of the Attorney General expressed in December 1977 hearing, i.e.: to return to a District Court—referee system, despite prior 1978 congressional rejection and despite obvious procedural and practical constitutional difficulties. Apparently, some officials in the office of the Attorney General remain hostile to the syllogism now established by *Northern Pipeline* that § 241(a) broad jurisdiction and finality of judicial actions demands an Article III trial court; and reluctant to recognize the public policy of Congress to vest a broad, unitary grant of jurisdiction to the Bankruptcy Court. The Congress in 1935 acted and the President approved within 92 days to revise and reenact the Frazier-Lemke Act to continue that farmer rehabilitation relief statute which the Supreme Court has declared unconstitutional in the *Radford* case, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593. In *Northern Pipeline,* the Supreme Court has suggested that Congress "reconstitute" the Bankruptcy Court in 96 days. The announced timetable of the Attorney General does not allow Congress much opportunity for meaningful legal advices from the law firm of our federal government. Thus, regretably, Congress is absent the quality of constitutional legal advice given Congress in the early 1930's by the historic, valuable and time-tested scholarly Thatcher memorandum.

result, the Bankruptcy Court's jurisdiction is limited to "traditional summary jurisdiction" as that term was understood under § 2a(7) of the Bankruptcy Act of 1898 as amended.

(3) The Bankruptcy Court must dismiss, or as an alternative remedy, transfer the proceeding to the United States District Court, an Article III Court which possesses jurisdiction over state common law and other actions found by the Supreme Court to be beyond the constitutional jurisdiction of this non-Article III Bankruptcy Court:

(1) *The Supreme Court has the power to stay the effect of its judgment.*

The Supreme Court in *Northern Pipeline* found the grant of jurisdiction to the Bankruptcy Court under Title 28 U.S.C. § 1471 and the other following related jurisdiction provisions enacted by § 241(a) of the Bankruptcy Act of 1978 to be the exercise of the "judicial power of the United States" and thus unconstitutional because Article III of the U.S. Constitution reserves such power only to judges appointed for life whose compensation may not be reduced during tenure. Nevertheless the Court thereupon specifically directed that (1) its judgment would not be applied retroactively and (2) the judgment will be stayed in respect to other proceedings in the United States Bankruptcy Court until October 4, 1982 to give Congress time to act to reconstitute a constitutional court to hear and adjudicate the proceedings arising under Section 241(a) of the Reform Act of 1978.

The Supreme Court refused retroactivity in accordance with the three considerations set forth in *Chevron Oil Company v. Huson*,[2] finding specifically that its holding decided (1) an issue of first impression, (2) the resolution of which was not clearly foreshadowed by earlier cases, (3) and that its holding "would surely visit substantial injustice and hardship" upon litigants similar to the plaintiffs in the proceeding who relied upon the 28 U.S.C. § 1471 jurisdiction grant.[3]

It is fruitless to speculate whether the Supreme Court has the power to stay the effects of its own judgment to parties not before it. The essence of power is authority to act in the absence of effective review. It is axiomatic that the Supreme Court is subject to no review other than the political process through constitutional amendment and its own power to review its own decisions, reverse, define, limit or expand as the Court deems appropriate.

(2) *Neither the decision nor the stay is limited in scope to the state-law contract facts of the case and other traditional actions at common law. The stay does not prohibit this court, after June 28, 1982, from exercising jurisdiction over state-law contract proceedings and other common law proceedings.*

Movants argue that an analysis of the decisions cited in the final paragraph by Justice Brennan in the stay of the judgment after June 28, 1982 to October 4, 1982 shows that the court intended the stay to be restricted to the facts before the court, to wit: "traditional actions at common law", which movants call plenary jurisdiction.

An ancillary argument is that the decision and stay leaves this court, after June 28, 1982, with the power only to exercise "traditional summary jurisdiction" as that jurisdiction has been traditionally reserved to bankruptcy courts.

If the stay is limited in scope, it is restricted either because of limitation in the Court's power to stay the effect of its judgment or because of limitations of the holding of the Court. This Court will first deal with alleged limitation of the scope of the stay.

(a) *Analysis of the stay; limited in duration only, not limited in scope.*

The scope of the stay of the judgment is not limited as to any class of proceeding under Section 241(a) of the 1978 Act which may be adjudicated during the interim.

---

**2.** *Chevron Oil Company v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971).

**3.** *Northern Pipeline Construction Co. v. Marathon Pipe Line Company*, —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598; 9 B.C.D. 67 (1982).

The Supreme Court's determination in *Northern Pipeline* not to apply the decision retroactively, and its determination to stay the effect of the judgment generally until October 4, 1982, are hand in glove. The judgment was not applied retroactively because this "would surely visit substantial injustice and hardship upon *those litigants* who relied upon the Act's vesting of jurisdiction in the bankruptcy courts".[4] (Emphasis supplied). The concurrent "limited stay" of prospective application was also to prevent substantial injustice upon "those" *many* "litigants" involved currently in bankruptcy litigation under the Title 11 United States Code which immediate application of the judgment would impose upon the litigation which Congress had allowed under the jurisdiction grant of § 241(a) of the Act of 1978. The stay was "to afford Congress the opportunity to reconstitute" the unitary, broad jurisdiction of United States Bankruptcy Courts or to adopt other valid means of Title 11 adjudication "*without imparing the interim administration of the bankruptcy laws.*"[5] (Emphasis supplied). The citation by the Court of its decisions should not be analyzed to rationalize a limited scope for the *Northern Pipeline* stay, but instead viewed only as illustrations of prior instances in which the Supreme Court had temporarily stayed its judgments. The cited Court decisions cannot be construed as intending a limitation in scope of the *Northern Pipeline* stay.[6]

Recognizing that the effect of its decision was to leave the Bankruptcy Court virtually without jurisdiction over Title 11 cases and proceeding, the Supreme Court evidently believed that substantial chaos would surely result among bankruptcy participants and perhaps throughout our economy unless a temporary stay of the judgment was issued and a statutory solution effected by Congress within the interim. The Court plurality recognized that the firm public policy of Congress after a decade of inquiry was that the bankruptcy jurisdiction should be a broad, unitary grant to one court and that the court should be an independent Bankruptcy Court.[7] The concurring opinion likewise recognized that the jurisdictional grant of § 241(a) of the Bankruptcy Reform act was intended by Congress as a unitary package incapable of constitutional or practical division.[8] The plurality observed that all of § 241(a) jurisdiction originally granted by 28 U.S.C. § 1471(a) and (b) to the District Court was a "facade"[9] as it had been effectively vested exclusively in the Bankruptcy Court, and the District Court had no Title 11 trial jurisdiction to exercise.[10] Hence, the stay was a practical necessity without which no trial court had any authority after June 28, 1982 to exercise jurisdiction over Title 11 cases and proceedings.

As strange as it may seem to some who seem to doubt the authority of the Supreme Court to define and limit its judgment, the Court continued its policy announced in prior decisions[11] to allow for some short dura-

**4.** *Northern Pipeline, supra,* J. Brennan, —— U.S. at ——, 102 S.Ct. at 2880, 9 B.C.D. at 85.

**5.** *Northern Pipeline, supra,* J. Brennan, —— U.S. at ——, 102 S.Ct. at 2880, 9 B.C.D. at 85.

**6.** *Northern Pipeline, supra,* —— U.S. at ——, 102 S.Ct. at 2880; See *Armco, Inc. v. Cherry Pond Coal Co.,* 21 B.R. 592, 9 B.C.D. 439 (D.C. S.D.W.Va.1982) who in reversing the Bankruptcy Court held that none of the cases could be construed to be a limitation on the stay.

**7.** *Northern Pipeline, supra,* J. Brennan, —— U.S. at —— n. 40, 102 S.Ct. at 2880 n. 40, 9 B.C.D. at 84.

**8.** *Northern Pipeline,* supra, Rehnquist —— U.S. at ——, 102 S.Ct. at 2882 ".... I agree with

the plurality that this grant of authority is not readily severable from the grant of authority to Bankruptcy Courts under § 241(a) ...."

**9.** *Northern Pipeline, supra,* J. Brennan, —— U.S. at ——, 102 S.Ct. at 2879, 9 B.C.D. at 84; Norton Bankruptcy Law and Practice, § 4.18.

**10.** *Northern Pipeline, supra,* J. Brennan, —— U.S. at ——, 102 S.Ct. at 2879, 9 B.C.D. at 84.

**11.** *See Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976); *Georgia v. United States,* 411 U.S. 526, 93 S.Ct. 1702, 36 L.Ed.2d 472 (1973); *Fortson v. Morris,* 385 U.S. 231, 87 S.Ct. 446, 17 L.Ed.2d 330 (1966); *Maryland Comm v. Tawes,* 377 U.S. 656, 84 S.Ct. 1429, 12 L.Ed.2d 595 (1964).

tion the continued post-judgment unconstitutional exercise of power. In this case the Court allowed the continued unconstitutional exercise of the "judicial power of the United States" by Bankruptcy Judges.[12] The Supreme Court evidently viewed the limited stay of its judgment and the resulting continuance of Article I judges exercising Article III powers to be less offensive than the possible results of immediate enforcement of its judgment. If the Court had intended to prohibit the exercise of jurisdiction over plenary litigation only and to allow the exercise of summary jurisdiction, it would have so stated.

Because the decision fails to delineate a division of the § 241(a) jurisdiction which it found offends Article III, the extension of the arguments of movants that the stay is limited in scope and forbids the exercise of socalled plenary jurisdiction, is that after June 28, 1982, the United States Bankruptcy Judges may not exercise any of the § 241(a) jurisdiction over Title 11 USC litigation. It seems beyond dispute that the Supreme Court did not intend any such limitation of jurisdiction. Without the stay this court would have no § 241(a) jurisdiction. This court cannot conclude that the stay order of the Supreme Court was a useless or ineffective action. Until such time as the stay terminates, the judicial acts of the United States Bankruptcy Judges, although exercising all of the 28 U.S.C. § 1471[13] jurisdiction, are constitutionally permissible.[14]

The movants have also argued that even if the Supreme Court's power to define its own judgments is not limited, and even if the stay is not limited in scope, that the decision of the Supreme Court in *Northern Pipeline* must be limited strictly to the question before the Court. The movants find that the question before the Supreme

Court in the *Northern Pipeline* case was whether or not the adjudication of claims arising out of state law by the bankruptcy court is constitutional where the party defendant does not consent to the jurisdiction of the court and where the claim does not involve property in the possession of the Bankruptcy Court. They concluded that because the Supreme Court answered this question negatively that the jurisdiction of this court is now limited to what they refer to as "traditional summary jurisdiction" apparently because of its similarity to the jurisdictional grant of § 2(a)(7) of the Bankruptcy Act of 1898.[15]

Even if the correct interpretation of the *Northern Pipeline* decision is to prohibit this trial court from adjudicating state plenary-type issues similar to the state-law contract dispute involved in that decision (to which view this court disagrees), this court disagrees with the notion that the scope of the decision and stay is limited to restrict the Bankruptcy Court to constitutionally exercise only "traditional summary jurisdiction" as that jurisdiction was known (but little understood) under the 1898 Bankruptcy Act. Presumably such perceived "summary" jurisdiction authority over issues incident to property in the possession of the debtor is pursuant to 28 U.S.C. § 1471(e). Surely it cannot be under the 1898 Bankruptcy Act § 2(a)(7) which has been repealed by the 1978 Bankruptcy Reform Act.[16]

The Supreme Court plurality opinion deliberately went beyond the state-law contract facts before it and found the broad jurisdiction conferred by § 241(a) upon non-Article III judges unconstitutional. The Court said that the "broad grant of jurisdiction to bankruptcy courts contained in § 241(a) is unconstitutional."[17] The Court

---

**12.** *Northern Pipeline,* supra, J. Brennan, —— U.S. at ——, 102 S.Ct. at 2879, 9 B.C.D. at 84.

**13.** Enacted by § 241(a) of the Bankruptcy Reform Act of 1978.

**14.** *Northern Pipeline, supra,* J. Brennan, —— U.S. at ——, 102 S.Ct. at 2880, 9 B.C.D. at 85.

**15.** See *Armco, Inc. v. Cherry Pond Coal Co.,* 21 B.R. 592, 9 B.C.D. 439 (D.C.S.D.W.Va.1982) Rvsing. 21 B.R. 588, 9 B.C.D. 224 (Bkrtcy.S.D. W.Va.1982).

**16.** Bankruptcy Reform Act of 1978, Pub.L. 95–598 § 401.

**17.** *Northern Pipeline Construction Co. v. Marathon Pipe Line Company,* —— U.S. —— at

also found that Congress intended the § 241(a) grant of broad jurisdiction to be a unitary package vested in the Bankruptcy Court.[18] Obviously, the plurality found it difficult to separate the state-law contract dispute *sub judice* as a class of actions falling within the powers included in Article III from the broad, inclusive jurisdictional grant of § 241(a) so as to enable anyone to know what jurisdiction remained which would not constitute "the judicial power of the United States."[19]

Thus, the jurisdictional grant to the Bankruptcy Court that *Northern Pipeline* found unconstitutional is *all* the jurisdiction of § 241(a). This includes the jurisdiction conferred by 28 U.S.C. 1471(e) which seems to be equivalent to "traditional summary jurisdiction".

But, also, we should not be misled into believing that the "summary plenary jurisdiction distinction (even if it could be clearly delineated) represents the demarcation between the jurisdiction the Supreme Court would have found constitutionally permissible and that it found constitutionally impermissible.

Summary jurisdiction was based upon the common law principle of *in rem* jurisdiction that the court which acquires control of property has the power to adjudicate claims concerning it. Plenary jurisdiction was *in personam* jurisdiction over persons or entitles other than the debtor and individuals or others consenting to the jurisdiction of the court. The plenary and summary jurisdictional division was established under the 1898 Act as a method of minimizing inconvenience and expense to third parties sued by the trustee in those days when both communication and travel were more difficult. That division of jurisdiction was de-

signed as a convenience to parties, not a constitutional requirement.

Moreover, initially under the 1898 Act, the Article III District Judge exercised all of the judicial power and entered all orders in bankruptcy cases and proceedings. At first, referees were infrequent, not full time employes but were paid on a fee based upon assets recovered. Referees were not required to be lawyers. These ad hoc referees were purely administrators and special masters whose recommendations were reviewed in a *de novo* proceeding before the District Judge. As the referee became the norm in District Courts and later full time positions, by delegation and function, the referee became the *de facto* bankruptcy trial judge without *de jure* status, and the District Judge became, in effect, an appellate judge. In subsequent years gradually by evolution, by congressional statutory amendments, by adoption of Bankruptcy Rules, and general delegation, the full judicial power over summary and consent jurisdiction came to be exercised by the referee-Bankruptcy Judge who conducted bankruptcy litigation and entered orders subject only to appeal to the District Court. Bankruptcy Rule 810 governed appeals and set forth the appellate standard that the findings of the Bankruptcy Judge would not be reversed unless found to be clearly erroneous.

While it is true that the constitutionality of the exercise of jurisdiction by the referee or Bankruptcy Judge under the 1898 Act, either as it existed before 1973 or thereafter, was never judicially determined, this fact alone is not proof of the constitutionality of summary jurisdiction under the 1898 Act when exercised by a non-Article III judge.

In 1977 witnesses before the House Judiciary Committee[20] expressed doubts about

---

—, 102 S.Ct. 2858 at 2880, 73 L.Ed.2d 598, 9 B.C.D. 67, 86 (1982).

**18.** *Northern Pipeline, supra,* J. Brennan, — U.S. at —, 102 S.Ct. at 2880, 9 B.C.D. at 84; see also J. Rehnquist concurring opinion, *supra* — U.S. at —, 102 S.Ct. at 2882, 9 B.C.D. at 86.

**19.** *Northern Pipeline, supra,* J. Brennan, — U.S. at —, 102 S.Ct. at 2878, 9 B.C.D. at 84.

**20.** The House Report of 1977 found that the Bankruptcy Act so-called "summary" jurisdiction exercised by referees—Bankruptcy Judges required application of the " 'broadest spectrum of other laws governing for example, taxes, torts, negotiable instruments, contracts, spendthrift and other trusts, mortgages, conveyances, landlord and tenant relationships, partnerships, mining, oil, and gas extraction, domestic relations, labor relations, insurances,

the constitutionality of the summary jurisdiction concept if exercised by non-Article III Judges.[21] The plurality decision certainly did not indicate that the distinction between Article I judicial powers and Article III judicial powers was equivalent to the distinction between summary jurisdiction and plenary jurisdiction.[22] Absent the provision conferring jurisdiction by consent of the parties,[23] the only distinction between summary jurisdiction and plenary jurisdiction as defined by the Bankruptcy Act was the common law distinction between *in rem* and *in personam* jurisdiction. The plurality decision in *Northern Pipeline* did not even consider the distinction between summary and plenary jurisdiction. Instead the Court's decision turned upon analysis of the distinction between the adjudicative powers permitted an Article I court and adjudica-

Securities and Exchange Commission statutes, regulations and decisional law...' " H.R.Rep. No. 95–595, 95th Cong 1st Sess 10 (1977), U.S. Code Cong. & Admin.News 1978, pp. 5787, 5971.

The House Report cited *In re Fotochrome, Inc.* where the Bankruptcy Judge was faced with an international conflict of laws question involving the construction of certain treaties, the Japanese Civil Code, and an award made by the International Arbitrary Tribunal. *Id.* "Much of the decisional law surrounding the requirement of the Fifth Amendment with respect to property rights derives from bankruptcy cases". Id n. 38

The House Report further found that the bankruptcy courts

have also considered issues such as State sovereignty and Federalism; first amendment rights; the scope of the contracts clause; the jurisdiction and powers of Federal courts; and legitimacy of congressional grants of jurisdiction, to name only a few that have arisen. The issues resolved at the trial level in the bankruptcy court system are myriad. Id. 10, U.S.Code Cong. & Admin. News 1978, p. 5972.

Former District Judge Simon H. Rifkind, representing the American Trial Lawyers Association, testified before the House Subcommittee that:

The truth of the matter is ... [that] bankruptcy cases deal with all the materials of the law-contracts, torts, real estate, leases, employer-employee relations, union and employer relations, securities law, anti-trust laws, constitutional law, tax laws. Everyone of those is part of the matrix of the material that is the subject matter of the bankruptcy proceedings ... There is not a branch of the law which is alien to the bankruptcy practice. The analysis of the legal principles which relate to these subjects *as they come to the surface in a bankruptcy case,* feed into the general body of law and received instruction from and stimulation from these bodies of law when entertained in non-bankruptcy cases.

Hearings before the Subcomm on Civil and Constitutional Rights of the House Comm on the Judiciary, 95th Cong., 1st Sess, Serial No. 36 at 29 (statement of Judge Simon Rifkind) (1977)·

The statement of the Judicial Conference Ad Hoc Committee on Bankruptcy Administration introduced before the House Subcommittee and Senate Subcommittee similarly declared:

First of all, bankruptcy cases are unique only in their administrative and procedural aspects. Except for procedural questions, questions relating to discharges and the effect of discharges, and questions of statutory interpretation involving the Bankruptcy Act itself, any questions which might arise in Bankruptcy cases or proceedings might also arise in other cases brought under the existing jurisdiction of the District Courts.

Serial No. 36, supra note 7 at 113 (statement of Judge Wesley E. Brown, Chairman, Judicial Conference Ad Hoc Committee on Bankruptcy Legislation).

21. Hearings, Subcommittee on Civil and Constitutional Rights of the Committee on the Judiciary, House of Representatives, 95th Cong. 1st Sess, on HR 8200, December 12, 13, 14, 1977. Serial No. 36, Treister, p. 250, Marsh p. 85–88

22. The Court mentioned "summary" jurisdiction to develop the historical basis of the problem and never used it as an analytical base for its decision. See *Northern Pipeline, supra,* —— U.S. at ——, 102 S.Ct. at 2862 (9 B.C.D. at 68)

23. Bankruptcy Act 1898, § 2a(7)

"In proceedings under this act ... and determine controversies in relation to the property in the possession of the debtor ...; and where in a controversy arising in a proceeding under this act an adverse party does not interpose objection to the summary jurisdiction of the Court of Bankruptcy, by answer or a motion filed before the expiration of the time prescribed by law or rule of court or fixed or extended by order of court for the filing of an answer to the petition, motion or other pleading to which he is adverse, he shall be deemed to have consented to such jurisdiction."

Such provision and jurisdiction was repealed by the Bankruptcy Act of 1978. See: Bankruptcy Act of 1978, Title IV Transition, Section 401(a) specifically states: "The Bankruptcy Act is repealed." See also Section 401(a)–(e) of the Act of 1978.

tive powers exclusively reserved for an Article III court.

The plurality Court, apparently joined by the concurring Justices, suggested a basis of constitutional bankruptcy jurisdiction to be the cleavage between disputes involving possible core bankruptcy "public rights" and disputes involving "private rights". The plurality opinion distinguished "public rights" as a class of proceeding which may be defined and assigned by Congress to be adjudicated by a non-Article III judge from "private rights" as a class of proceeding which comprise the "judicial power of the United States" and may be adjudicated only by an Article III judge. The plurality opinion clearly stated that the doctrine of separation of powers and previous decisions of the Supreme Court deny judicial officers who are not provided life tenure and guarantees against diminution in salary the power to adjudicate traditional common law claims, or as the court said "private rights".[24] Private-rights involve the "liability of one individual to another under the law . . . ."[25] "Private-rights disputes," Justice Brennan wrote, "lie at the core of the historically recognized judicial power."[26] On the other hand, "public rights" may be adjudicated by judicial officers not enjoying the protection of Article III. To explain this distinction further, Justice Brennan wrote, ". . . [T]he public rights doctrine also draws upon the principal of separation of powers, and an historical understanding that certain perogratives were reserved to the political branches of government. The doctrine extends only to matters arising 'between the Government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments,' *Crowell v. Benson,* 285 U.S. 22, 50, 52 S.Ct. 285, 292, 76 L.Ed. 598 (1932), and only to matters that historically could have been determined exclusively by those departments . . . ."[27] To further clarify the distinction between public-rights and private-rights, Justice Brennen observed, "that a matter of public-rights must at a minimum arise 'between the government and others.' "[28]

Thus, in spite of considerable obfuscation, the principles enunciated by the Supreme Court are precise. Bankruptcy Judges who are not afforded the protection of Article III are constitutionally prohibited from adjudicating rights involving the liability of one individual to another as defined under the law. Adjudication of the rights of individuals in property or individual claims to property in bankruptcy proceedings certainly often, if not always, involves determination of the liability of one party to another. Consequently, granting the non-Article III Bankruptcy Court actual or constructive possession of the property in question does not resolve a constitutional prohibition. Both summary and plenary jurisdiction often involved adjudication of individual rights in property or private rights. Thus, the delineation of summary and plenary jurisdiction (even if it could be defined with clarity) is not a demarcation of constitutional jurisdiction. The Supreme Court, as with others of us, finds it difficult to define what is the minimum authority which will constitute "the judicial power" and when some Article III judicial power may be permissibly exercised by non-Article III judges.[29]

**24.** *Northern Pipeline, supra,* J. Brennan —— U.S. at ——–——, 102 S.Ct. at 2870–71, 9 B.C.D. at 76

**25.** *Northern Pipeline,* Id.

**26.** *Northern Pipeline,* Id.

**27.** *Northern Pipeline, supra,* J. Brennan, —— U.S. at ——, 102 S.Ct. at 2870, 9 B.C.D. at 75

**28.** *Northern Pipeline, supra* J. Brennan, —— U.S. at ——, 102 S.Ct. at 2870, 9 B.C.D. at 76, citing *Ex parte Bakelite Corp.,* 279 U.S. 438, 451, 49 S.Ct. 411, 413, 73 L.Ed. 789 (1929)

**29.** *Northern Pipeline,* supra, —— U.S. at ——, 102 S.Ct. at 2870, 9 B.C.D. at 76; see also n. 33 & 34, J. Brennan, —— U.S. at —— & ——, 102 S.Ct. at 2877, 9 B.C.D. at 82

Given the possible public rights—private rights demarcation, the difficulty as the Court noted is finding a package of the core of bankruptcy proceedings which might be properly classed as "public rights". The plurality opinion even refused to admit, as appellants had contended, that the granting of a discharge was an action involving "public rights". J. Brennan, —— U.S. at ——–——, 102 S.Ct. at 2871. The plurality opinion stated that at the very

However, most certainly, this minimum is not equated to the "summary" jurisdiction concept, although some proceedings of summary jurisdiction may have involved adjudication of some aspects which could be defined within the public rights concept.[30] Also, the summary jurisdiction concept includes the adjudication of many private rights.

If it is assumed that the decision prohibits the exercise by this court of jurisdiction over proceedings involving "private rights", which encompasses state law controversies and other so-called plenary litigation, rather than returning the Bankruptcy Court to a limited "traditional summary jurisdiction" as provided in 28 U.S.C. § 1471(e), the Bankruptcy Court would be prohibited under Article III from exercising *any* Section 241(a) jurisdiction. That is, *Northern Pipeline* excludes *all* § 241(a) jurisdiction. Thus, the *Northern Pipeline* decision cannot be construed to exclude some § 241(a) jurisdiction from and grant "summary" jurisdiction to the Bankruptcy Courts.

(3) *The exercise of "traditional summary jurisdiction" to a non-Article III Court is probably unconstitutional.*

Moreover, it is extremely doubtful that "traditional summary jurisdiction", if it were a package of jurisdiction allowed to be exercised by a non-Article III court, would be approved by the Supreme Court as a constitutional grant. It encompassed actions which were clearly traditional common law actions, albeit such actions arose out of possession of property under the control of the court. Nowhere in the plurality or concurring opinions is there any suggestion or indication of the validity of the "summary" and "plenary" notions that determined jurisdiction of courts of bankruptcy under the 1898 Act. The comments of the plurality opinion in and preceding fn. 40 are certainly consistent with the proposition that the exercise of "summary" jurisdiction over issues involving the property in the possession of the debtor at the time of filing involves the "judicial power" and thus is unconstitutional if exercised by a non-Article III Court.[31] The plurality opinion pointedly observed that the *modus operandi* and jurisdiction exercised by the referees Bankruptcy Judges under the courts of bankruptcy pursuant to the Act of 1898 has never been constitutionally approved.[32]

As the House Report No. 95–595, *supra,* enumerated at page 10, the § 2(a)(7) summary jurisdiction of the 1898 Act included broad classes of trials of important issues

least the controversy must have the government as one proper party, but that alone is not enough and in any question of public vs. private rights, "the presumption is in favor of Article III Courts". J. Brennan, —— U.S. at —— n. 23, 102 S.Ct. at 2870 n. 23. Aside from the question of how is the government a proper party in the "restructuring of debtor-creditor relations which is at the core of the federal bankruptcy power" (J. Brennan, —— U.S. at ——, 102 S.Ct. at 2871) (other than the government granting the privileges in a comprehensive statute pursuant to the Article I, Sec. 8 bankruptcy power), it may be difficult also to find many core bankruptcy proceedings that do not involve serious property, or other contract and tort rights, involving claimants or defendants, all of which seem to be private common law rights "involving the liability of one individual to another", or "private adjudications" xx" of matters (which) from their nature (are) subject to a suit at common law or in equity or admiralty". (*Supra,* —— U.S. at —— n. 25, 102 S.Ct. at 2871 n. 25). Claims involving the determination of property value and equity are rights which have traditionally been carefully reserved for the highest eschelon of the chan-

cellery. As *Northern Pipeline* indicates, any legislation to classify perceived core bankruptcy proceedings involving some common law rights as public rights and not private rights may be on tenuous Article III constitutional grounds, plus the presumption is in favor of Article III courts. But that determination is not before this court as *Northern Pipeline* found, as these motions involve other issues.

30. *Northern Pipeline, supra,* J. Brennan, —— U.S. at ——, 102 S.Ct. at 2871, 9 B.C.D. at 77. The Court did not even definitely state that discharge was a "public right."

31. *Northern Pipeline, supra,* —— U.S. at ——, 102 S.Ct. at 2880, 9 B.C.D. at 85

32. *Northern Pipeline,* supra, J. Brennan, —— U.S. at ——, 102 S.Ct. at 2862, 9 B.C.D. at 67; see also n. 29 "Appellants and Justice White's dissent also rely on the broad powers exercised by the bankruptcy referees immediately before the Bankruptcy Act of 1978 ... but those .... functions .... have never been explicitly endorsed by this Court."

involving broad equitable decrees and alteration of contract and property rights of many parties in interest.[33] Controversies encompassed by "traditional summary jurisdiction" are so broad, and so affect, abridge and adjust the property rights and other contract and tort rights of debtors and creditors,[34] that the orders, decrees, judgments and executions are indistinguishable from the "judicial power of the United States."[35] As commented before herein, summary jurisdiction proceedings surely and generally involve many serious "private rights". A critical point in any such discussion of the attributes of "the judicial power of the United States" is that under the 1898 Act, as it operated immediately prior to the adoption of the present Bankruptcy Code, the trial judge who tried the proceeding and entered the final orders, decrees, judgments, executions in litigation was a non-Article III judge,[36] and that litigants in such important federal litigation and subject to such judicial actions are entitled under Article III to a capable and independent judge to exercise that judicial power.[37] There is no indication in the *Northern Pipeline* decision that the concept of possession of property by the Court has any Article III relevance. Every characterization of the matter *subjudice* whether in terms of "private" law, state law, "common" law dealt with something other than possession of the *res*. Thus, to the extent "traditional summary jurisdiction" included private rights adjudication, the exercise by the Bankruptcy Judges of such jurisdiction is unconstitutional.

Thus, if the stay forbids this court to adjudicate state law private rights issues after June 28, 1982, as movants argue, this court also could not constitutionally exercise traditional summary jurisdiction.

(4) *Consent of the parties cannot confer upon this court subject matter jurisdiction not otherwise conferred.*

■ The court rejects movants suggestion that this court lacks § 241(a) plenary jurisdiction during the duration of the stay (and thereafter unless Congress reconstitutes the court), *except* upon the consent of the parties to confer jurisdiction. This court rejects the possibility of that suggested exception. Movants misconstrue both the stay and the effect of consent of parties to litigation. If a power to adjudicate is either constitutionally or statutorily prohibited, jurisdiction will not be conferred upon the court by the consent of the parties or by waiver.[38] Not even consent and estoppel by judgment will confer jurisdiction where it is prohibited.[39]

Even if the correct interpretation of the Court's stay were that the Bankruptcy Court after June 28, 1982 does not have jurisdiction over state contract issues and the like, this court rejects the suggestion that consent of the parties can confer such jurisdiction as under prior Bankruptcy Act § 2(a)(7) and *Katchan v. Landy.*[40]

This court knows of no statute applicable to the court of bankruptcy created under the 1898 Bankruptcy Act, charged under Section 404(a) of the 1978 Act with the continuing responsibility during the transition period of administering cases and proceedings under Title 11, or any provision in the 1978 Act which allows a Bankruptcy Judge by the consent of the parties to adjudicate controversies beyond the authorized subject matter jurisdiction of this court al-

33. HR Rep. No. 95–595, 95th Cong., 1st Sess 10 (1977); See fn. 20, *supra*

34. See n. 20, *supra*

35. Id.

36. HR Rep. No. 95–595, 95th Cong. 1st Sess (1977); See also *Northern Pipeline, supra,* J. Brennan, —— U.S. at ——, n. 31, 102 S.Ct. at 2876, n. 31, 9 B.C.D. at 81, n. 31.

37. See *Northern Pipeline, supra,* J. Brennan, —— U.S. at ——, 102 S.Ct. at 2865, 9 B.C.D. at 72.

38. *Rock Island Millwork Co. v. Hedges Gaugh Lumber Co.* 337 F.2d 24, 26 (CA8)

39. *American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 17, 71 S.Ct. 534, 541, 95 L.Ed. 702 (1951)

40. *Katchen v. Landy* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966)

lowed under § 241(a) of the 1978 Act. Section 2(a)(7) of the Bankruptcy Act of 1898 was an exception to the common law jurisdictional doctrine in order to statutorily confer jurisdiction to the referee, later Bankruptcy Judge, by consent of the parties.[41] Being repealed by § 401(a) of the Reform Act,[42] no such jurisdiction by consent would be applicable to present circumstances under Title 11 if this court is absent such jurisdiction after June 28, 1982.

As aforesaid, this court concludes that the stay of the Supreme Court renders the jurisdiction and judicial authority of this court to October 4, 1982, the same as existed immediately prior to June 28, 1982, i.e.: the full jurisdiction enacted in 28 U.S.C. Chapter 90 by § 241(a) of the 1978 Act, and consent of the parties has nothing to do with it.

(5) *The proceeding cannot be transferred to the U.S. District Courts.*

█ Contrary to suggestions by movants, an alternative solution in absence of jurisdiction in this court is not to transfer the civil proceeding to the District Court or any other court of perceived jurisdiction. If, under the *Northern Pipeline* stay, as argued by several movants, the Bankruptcy Court does not have jurisdiction over such proceedings, the Bankruptcy Court has no option other than to dismiss.[43] In the absence of subject matter jurisdiction, a federal court has no authority to transfer the proceeding to another forum; it must dismiss.[44] It is one thing to abstain and remand to a court of concurrent jurisdiction a proceeding which has been removed to the Bankruptcy Court,[45] but it is quite another for a court absent subject matter jurisdiction of a proceeding to transfer such proceeding to another court.[46]

Moreover, contrary to argument of movants, Title 11 cases and proceedings may not be initiated in the District Court. The Supreme Court in *Northern Pipeline* did not deal with the potential for trial jurisdiction of the District Court over Title 11 U.S.C. cases and proceedings pursuant to 28 U.S.C. § 1471(a) & (b), except to say such original jurisdiction had been effectively removed and vested in the Bankruptcy Court.[47] After 28 U.S.C. 1471(c), (d) and (e), the United States District Court has no retained or residual subject matter jurisdiction under Title 11 which was granted under 28 U.S.C. § 1471(a) and (b).

Nor does the District Court have any derivative or inherited Title 11 jurisdiction by virtue of the *Northern Pipeline* decision declaring as unconstitutional the exercise of § 241(a) jurisdiction by the Bankruptcy Court created under 28 U.S.C. § 151(a). As the Supreme Court observed, the jurisdictional grant in § 1471(a) & (b), and the 28 U.S.C. 151(a) "adjunct" characterization was a "facade", i.e.: a fiction.[48]

The legislative history of the development of the 1978 Act reveals clearly that the Act never intended the District Court to be vested with or exercise in fact any Title II trial jurisdiction.[49]

One movant argues that because § 404(a) of Title IV Transition of the 1978 Act continues the existing courts of bankruptcy of the District Court, created under § 2a of the 1898 Act, during the transition period from October 1, 1979 to April 1, 1984, after *Northern Pipeline*, the court of bankruptcy, and thus the District Court, is vested with

**41.** Bankruptcy Act § 2(a)(7), see n. 12, *supra*

**42.** Bankruptcy Reform Act of 1978, § 401(a)

**43.** *Freeman v. Bee Machine Co.,* 319 U.S. 448, 449, 63 S.Ct. 1146, 1147, 87 L.Ed. 1509 (1943)

**44.** Id.

**45.** 28 U.S.C. § 1471(d); 28 U.S.C. § 1478.

**46.** *Freeman v. Bee Machine,* 319 U.S. 448, 449, 63 S.Ct. 1146, 1147, 87 L.Ed. 1509 (1943)

**47.** *Northern Pipeline,* supra, J. Brennan, —— U.S. at ——, 102 S.Ct. at 2879, 9 B.C.D. at 84

**48.** *Northern Pipeline, supra* —— U.S. at ——, 102 S.Ct. at 2879, *Norton Bankruptcy* Law & Practice § 4.18

**49.** HR Rep. No. 95–595 95th Cong. 1st Sess 445–446 (1977) n. 8 at 448 S.Rep. No. 95–989, 95th Cong. 2nd Sess. 154 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

or inherits jurisdiction over Title II cases and proceeding.

The provision of the 1978 Act (Sec. 404(a)) continuing the court of bankruptcy created by § 2(a) of the 1898 Act for the temporary transition period is for a specific purpose. That purpose is consistent with the 1978 Act which delayed the official creation of a new court structure until April, 1984. Section 404(a), however, does not include or carry with it any substantive law or jurisdiction grant. Title II jurisdiction is conferred only upon the new U.S. Bankruptcy Courts. The specific purpose of Sec. 404(a) was to allow the already existing Bankruptcy Judges to perform, through the structure of the already existing courts of bankruptcy, all of the responsibilities during the transition period imposed by the 1978 Act upon the new court to become effective April 1, 1984. There was no provision or intention anywhere in the Reform Act including Sec. 404(a) for District Judges to exercise any Title 11 trial function under 28 U.S.C. § 1471 after October 1, 1979. It is not so much that the court of bankrupty was continued by Sec. 404(a) during the transition period as a "separate department" of the District Court to have any life of its own, but that the existing Bankruptcy Judges were temporarily continued during the transition as repositories of the Reform Act jurisdiction and to exercise responsibilities until April, 1984, as though the new court was already in place. Any grant of jurisdiction after *Northern Pipeline,* specifically to the court of bankruptcy, must be found either in Section 241(a) of the Act of 1978 or in the Act of 1898. Section 401(a) of the Title IV Transition of the Reform Act repeals the 1898 Act and its jurisdictional grant. The grant of jurisdiction of Section 241(a) to the existing Bankruptcy Judges temporarily functioning

through the court of bankruptcy has been declared unconstitutional by *Northern Pipeline. Northern Pipeline* recognized that 28 U.S.C. § 1471(a) and (b) was a "facade of a grant" to the District Court and ineffective. *Supra,* —— U.S. at ——, 102 S.Ct. at 2879, J. Brennan, 9 B.C.D. at 84. It would be further fiction to suppose that § 404(a) is a nexus of 28 U.S.C. § 1471 jurisdiction to the court of bankruptcy and thence give functional trial jurisdiction authority to the District Court.

Also Title 11 petitions cannot be filed in the District Court. Under Title 11 U.S.C. Chapter 3, §§ 301, 302, 303, 304, 305, 306 and 28 U.S.C. § 1471[50] and the applicable legislative history, it is abundantly clear that Title 11 petitions must be filed in the United States Bankruptcy Court with the United States Bankruptcy Clerk, and that all proceedings in such bankruptcy cases must be filed in that home Bankruptcy Court; i.e.; the Bankruptcy Court of the district where the Title 11 petition is pending.[51] Under Section 305, it is the Bankruptcy Court, after notice and hearing; i.e.; not a District Court; that may dismiss a Title 11 case or may suspend a proceeding in a Title 11 case in the exercise of its control of its conferred jurisdiction over such case or proceeding. Absention under Section 305 *of* the jurisdiction over the case or proceeding means by the Bankruptcy Court, rather than the District Court. It is axiomatic that jurisdiction of federal courts will not be presumed[52] and, in fact, the presumption is against federal court jurisdiction.[53] Thus, in the absence of clear constitutional or federal statutory jurisdiction, jurisdiction must be denied by federal courts.[54] Just as *Northern Pipeline* and Article III forbids the exercise of the § 241(a) grant by the existing non-Article III Bankruptcy Courts, so the District Court

---

**50.** 11 U.S.C. §§ 301, 302, 303, 304, 305, 28 U.S.C. § 1930 requires payment of fees for commencing a case to the Clerk of the Bankruptcy Court.

**51.** HR Rep. No. 95–595 95th Cong., 1st Sess. (1977). S.Rep. No. 95–989, 95th Cong. 2nd Sess (1978).

**52.** *Grace v. American Central Ins. Co.* 109 U.S. 278, 283, 3 S.Ct. 207, 209, 27 L.Ed. 932 (1883)

**53.** Id.

**54.** Id. See also *Owen Equipment & Erection Company v. Kroger* 437 U.S. 365, 374, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978)

is forbidden to exercise any Title 11 trial jurisdiction of cases or proceedings in the absence of clear statutory authority.[55]  On and after October 1, 1979 the District Court is restricted to appellate jurisdiction of Title 11 proceedings.[56]

Having no jurisdiction over the Title 11 case or a proceeding in a Title 11 case, the District Court has no authority to retain, to transfer or to remand the case or proceeding.  It has only the authority to dismiss for lack of jurisdiction.[57]  Thus, aside from the proposition that the Bankruptcy Court absent jurisdiction may not transfer a proceeding to the District Court (or any other court) even if the transferee has jurisdiction, the District Court possesses no trial jurisdiction over any Title 11 case or proceeding.[58]

The motion to dismiss founded on alleged absence of jurisdiction of this court during the *Northern Pipeline* stay is denied.

As to continued exercise of Section 241(a) jurisdiction conferred by the 1978 Act in the interim, this court will continue until the termination of the stay to hear and adjudicate the issues in all proceedings by the priority allocation of available judicial time to the most important of pending disputed matters under the full expectation that the Bankruptcy Court constitutional problems will be solved by the Congress before the possible chaos after October 5, 1982 visits upon bankruptcy parties and Bankruptcy Judges.  The assumption by the Supreme Court and the expectation of this court is that Congress will act responsibly and promptly to carry out the mandate to "reconstitute the bankruptcy courts" [59] and that Title 11 chaos will be avoided.

IT IS SO ORDERED.

---

**55.**  Id.

**56.**  This comment, of course, applies only to cases filed after October 1, 1979.  Bankruptcy Reform Act § 405(c)(1)(C).

**57.**  *Freeman v. Bee Machine Co., supra.*

**58.**  Id; 28 U.S.C. § 1334.

**59.**  *Northern Pipeline, supra,* J. Brennan, —— U.S. at ——, 102 S.Ct. at 2880, 9 B.C.D. at 86