**In re James C. CONLEY and Laura J. Conley, Debtors.**

**and All Other Debtors Having Confirmed and Pending Chapter 13 Cases in Which Commerce Union Bank is a Creditor.**

**Bankruptcy No. 382–00990.**

United States Bankruptcy Court, M.D. Tennessee.

Jan. 26, 1983.

Henry E. Hildebrand, III, Nashville, Tenn., Trustee.

Marc McNamee, Nashville, Tenn., for Commerce Union Bank.

Perry Happell, Steve Norris and L.G. Caroland, Nashville, Tenn., for debtors.

Before GEORGE C. PAINE, II and KEITH M. LUNDIN, Bankruptcy Judges.

## MEMORANDUM AND ORDER

This matter is before the court on Commerce Union Bank's motion to compel the Chapter 13 trustee Henry E. Hildebrand to distribute funds currently held by the trustee in this and all other Chapter 13 cases in which Commerce Union Bank is a creditor. The trustee has responded by requesting a declaratory judgment from this court as to what, if any, subject matter jurisdiction this court continues to possess over pending and future Chapter 13 cases in light of the

United States Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).[1] These cases are pending before both bankruptcy judges of this district. In a decision entered contemporaneously with this opinion, this court has concluded that it retains subject matter jurisdiction under 28 U.S.C. § 1471 of the 1978 Bankruptcy Reform Act to adjudicate any matter or proceeding arising in a case commenced on or before December 24, 1982. *Walter E. Heller & Co. v. Matlock Trailer Corp.*, 27 B.R. 311 (Bkrtcy. M.D.Tenn.1983). The only issue remaining, therefore, concerns this court's jurisdiction to adjudicate Chapter 13 cases filed subsequent to December 24, 1982. Upon consideration of the evidence presented at the hearing, briefs of the parties, stipulations and the entire record, this court concludes that it lacks subject matter jurisdiction to adjudicate any case commenced after December 24, 1982, including cases initiated under Chapter 13 of the Bankruptcy Reform Act.

The hearing of this matter is necessitated by the Supreme Court's decision not to extend the stay of its opinion in *Northern Pipeline* beyond December 24, 1982. In *Northern Pipeline,* the Supreme Court found the broad grant of jurisdiction to the bankruptcy courts contained in § 241(a) of the Bankruptcy Reform Act of 1978 unconstitutional on the grounds that § 241(a) "impermissibly removed most, if not all, of 'the essential attributes of the judicial power' from the Art. III district court, and has vested those attributes in a non-Art. III adjunct."[2] *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 102 S.Ct. at 2879–2880. *See also In re Rivers,* 19 B.R. 438 (Bkrtcy.E.D.Tenn.1982). The Court held that Article III of the United States Constitution precluded Congress from delegating the broad judicial powers encompassed in § 241(a) to judges who lacked the protections of lifetime tenure and guaranteed salaries.[3] Although the *Northern Pipeline* opinion was issued on June 28, 1982, the Court stayed its judgment until October 4, 1982, in order to "afford Congress an opportunity to reconstitute the

1. The immediacy of this controversy is clear. The Chapter 13 trustee in this district is currently holding in his debtors' accounts more than $500,000.00 which would normally have been distributed to creditors in pending confirmed cases during the first week of January. The trustee's bonding company was not willing to insure the January distribution without court review of the jurisdictional problem. New Chapter 13 cases are being filed at the rate of approximately 20 per week. The trustee now seeks a declaration regarding jurisdiction pursuant to 28 U.S.C. § 2201 before he incurs the substantial expenses involved in administering both pending and future cases.

2. Section 241(a) of the Bankruptcy Reform Act of 1978 added, among other provisions, § 1471 to Chapter 28 of the United States Code. Section 241(a), 92 Stat. 2668–2669 (1980). 28 U.S. C.A. § 1471 (West 1979) defines the jurisdiction of courts of bankruptcy as follows:

"(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district court shall have original but not exclusive jurisdiction of all civil proceedings

arising under title 11 or arising in or related to cases under title 11.

(c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.

(d) Subsection (b) or (c) of this section does not prevent a district court or a bankruptcy court, in the interest of justice, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11. Such absention, or a decision not to abstain, is not reviewable by appeal or otherwise.

(e) The bankruptcy court in which a case under title 11 is commenced shall have exclusive jurisdiction of all of the property, wherever located, of the debtor, as of the commencement of such case."

3. U.S. Const. art. III, § 1 provides as follows:

"The judicial Power of the United States, shall be vested in one Supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behavior, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office."

bankruptcy courts or to adopt other valid means of adjudication, without impairing the interim administration of the bankruptcy laws." *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 102 S.Ct. at 2880. This court subsequently determined that the Supreme Court's stay permitted bankruptcy courts to exercise § 241(a) jurisdiction until October 4, 1982, so as to avoid "immediate chaos in the administration of bankruptcy cases." *Schneider v. 2-Star Foods, Inc. (In re Cumberland Enterprises, Inc.),* 22 B.R. 626, 631 (Bkrtcy.M.D.Tenn. 1982). *See also McAllester v. Aldridge (In re Anderson),* 24 B.R. 640 at 642 (Bkrtcy.M. D.Tenn.1982). When Congress failed to take any action prior to the expiration of the initial deadline, the Supreme Court extended the stay until December 24, 1982. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, ——, 103 S.Ct. 199–200, 74 L.Ed.2d 160 (1982). *See also United States v. Security Industrial Bank,* —— U.S. ——, —— n. 5, 103 S.Ct. 407, 410 n. 5, 74 L.Ed.2d 235, 240 n. 5 (1982). That date has also come and gone without Congress taking any measures to rectify the emasculated jurisdictional grant. Apparently dissatisfied with Congressional inaction on the issue, the Supreme Court refused to continue the stay past December 24, 1982. *See* 51 U.S.L.W. 2382.

In anticipation of the failure of the United States House of Representatives and the United States Senate to act in accordance with *Northern Pipeline* and the refusal of the United States Supreme Court to extend its stay, the Judicial Conference of the United States Courts requested the Director of the Administrative Office of the courts to provide each circuit with a proposed rule to permit the bankruptcy system to continue without disruption. Judicial Conference Resolution (September 23, 1982). The Director, William E. Foley, attempted to comply by providing a proposed rule drafted in the United States Court of Appeals for the Ninth Circuit. *See, e.g., Docter v. Gleicher (In re Stillman),* 26 B.R. 834, 837 (Bkrtcy.D.Md.1983); Letters from William E. Foley (September 27 and Decem-

ber 3, 1982) (discussing proposed rule). Thereafter the Judicial Council for the United States Court of Appeals for the Sixth Circuit promulgated a version of Mr. Foley's rule as an "emergency rule" which the United States District Court for the Middle District of Tennessee adopted on December 24, 1982, to "convey to the bankruptcy judges of this district authority to act in bankruptcy cases and proceedings until the Congress enacts appropriate remedial legislation in response to the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), or until March 31, 1984, whichever first occurs." *In re Administration of the Bankruptcy System,* Adm.Order No. 28(a), at 1 (M.D.Tenn. December 24, 1982). (A copy of this rule is made an appendix to this Memorandum and hereinafter said rule shall be referred to as "Adm. Order No. 28").

The Chapter 13 trustee for this district has now refused to distribute funds in and administer both pending and future Chapter 13 cases because of the questionable jurisdiction possessed by this court. As a result, Commerce Union Bank has filed this motion to compel distribution and the trustee has requested a declaration regarding the jurisdictional question.

A brief history of § 241(a) of the Bankruptcy Reform Act of 1978 is necessary to place the problem now confronting the court in proper perspective. The Bankruptcy Reform Act of 1978 itself was, as explained by one commentator, conceived in an atmosphere "surrounded by controversy and intrigue." Klee, *Legislative History of the New Bankruptcy Law,* 28 DePaul L.Rev. 941, 942 (1979). This characterization is equally descriptive of the events which culminated in the enactment of the jurisdictional provisions contained in § 241(a). After decades of battling with the bifurcated district court/bankruptcy court jurisdictional provisions of the 1898 Bankruptcy Act, one of the principal new features of the Bankruptcy Code of 1978 was the consolidation of all bankruptcy jur-

isdiction in one bankruptcy court. One of the central issues confronting Congress in establishing this new single court structure was whether the expanded jurisdictional grant to the bankruptcy courts necessitated the conferral of Article III status, with its protections of lifetime appointment and guaranteed salaries, upon the new bankruptcy judges. After extensive study, the House of Representatives concluded that the Constitution required Article III courts to adjudicate the broad range of matters arising under the revamped Bankruptcy Reform Act. H.R. 8200, 95th Cong., 1st Sess. (1977). *See Hearings on H.R. 31 and H.R. 32 before the Subcommittee on Civil and Constitutional Rights of the House Committee on the Judiciary,* 94th Cong., 2d Sess., 2081, 2084 and 2682–2706 (1976); H.R.Rep. No. 595, 95th Cong., 1st Sess. 23–39, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5984–6000. *See also Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 102 S.Ct. at 2866 n. 12; Klee, *supra,* at 945–948. The House's finding was based in large part upon the Subcommittee on Civil and Constitutional Rights' reports which, buttressed by the opinions of many leading experts, had concluded that Article III bankruptcy courts were constitutionally required. Subcommittee on Civil and Constitutional Rights of the House Committee on the Judiciary, Constitutional Bankruptcy Courts, 95th Cong.2d Sess., 33 (Comm.Print. No. 3, 1977); Subcommittee on Civil and Constitutional Rights of the House Committee on the Judiciary, Report on Hearings on the Court Administration Structure for Bankruptcy Cases, 95th Cong., 2d Sess., 5 (Comm.Print No. 13, 1978). The Senate bill, however, did not adopt the Article III status proposed by the House, opting instead for the creation of bankruptcy courts as adjuncts to the district courts under the auspices of Article I. S. 2266, 95th Cong., 2d Sess. (1978).[4]

The decision to accept the Senate's proposal, in disregard of the possible constitutional infirmity of such a broad grant of jurisdiction to non-Article III bankruptcy judges, was the result of a series of last minute compromises between the managers of both houses. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 102 S.Ct. at 2866 n. 12. *See also* Klee, *supra,* at 952–956. Strong political opposition existed against conferring Article III status on bankruptcy judges and therefore the provision in the House bill creating Article III bankruptcy judges was deleted in order to insure passage of the bankruptcy legislation before the end of the congressional session. *See* Klee, *supra,* 952–956; Klein, *The Bankruptcy Reform Act of 1978,* 53 Am.Bank. L.J. 1, 4 (1979). There can thus be little doubt that the final determination to create non-Article III bankruptcy courts was at least partially motivated by political concerns. The concerns and fears of those stressing the need for Article III bankruptcy courts were ultimately realized in the Supreme Court's *Northern Pipeline* decision declaring § 241(a) unconstitutional as an unauthorized delegation by Congress of Article III powers to an Article I court.

Having traced the events which gave rise to this proceeding, the court must now address the issue of whether this court retained any subject matter jurisdiction over cases filed after December 24, 1982, the effective date of the Supreme Court's *Northern Pipeline* decision; and, if no subject matter jurisdiction remains in this court to adjudicate cases commenced after that date, whether the emergency rule conferred any jurisdiction upon this court.[5]

---

**4.** U.S. Const. art. I, § 8, cl. 9 provides that Congress shall have the power "[T]o constitute tribunals inferior to the supreme Court."

**5.** To this date, this court is aware of at least three decisions which have addressed this issue. Both District Judge Robert E. DeMascio of the Eastern District of Michigan and Bankruptcy Judge Paul Mannes for the District of Maryland have upheld the emergency rule as constitutional and therefore have found that the rule as adopted could confer subject matter jurisdiction on the bankruptcy courts. *Prudential Insurance Co. v. Stouffer Corp. (In the Matter of Northland Point Partners),* 26 B.R. 860 (E.D.Mich.1983); *Docter v. Gleicher (In re Stillman),* 26 B.R. 834 (Bkrtcy.D.Md.1983).

■ After careful consideration, this court concludes that, for a number of reasons, it lacks subject matter jurisdiction to entertain any bankruptcy case filed subsequent to December 24, 1982. First, the language of the plurality and concurring opinions in *Northern Pipeline* leaves no doubt that bankruptcy courts no longer possess any jurisdiction under 28 U.S.C. § 1471 to adjudicate cases filed after December 24, 1982. The plurality and concurring opinions both agreed that § 241(a), later codified in part as 28 U.S.C. § 1471, was unconstitutional. Justice Brennan, writing for the plurality, held that "the broad grant of jurisdiction to the bankruptcy courts contained in § 241(a) is unconstitutional." *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 102 S.Ct. at 2880. Justices Rehnquist and O'Connor concurred in this finding. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 102 S.Ct. at 2882 (Rehnquist, J. and O'Connor, J., concurring). The conclusion is thus inescapable that, once the *Northern Pipeline* decision became effective on December 25, 1982, this court lost any subject matter jurisdiction possessed pursuant to § 1471 over cases initiated after December 24, 1982.[6]

■ Nor can this court accept, as a few commentators have suggested, the argument that the jurisdictional provision of the 1898 Bankruptcy Act was miraculously resurrected upon the abrogation of § 241(a). *See, e.g.,* Memorandum from Carl Imlay, General Counsel for the Administrative Office of United States Courts, to William E. Foley, Director of the Administrative Office of United States Courts (July 22, 1982), *reprinted in* H.R.Rep. No. 807, 97th Cong., 2d Sess. 30 (1982). Section 401(a) of the Bankruptcy Reform Act explicitly repealed the former 1898 Bankruptcy Act in its entirety as of October 1, 1979. § 401(a), 92 Stat. 2682 (1980). The jurisdictional provisions of the 1898 Act thus ceased to be of any effect after that date. Although authority exists for the proposition that an unconstitutional statute may not repeal a prior valid statute, *see, e.g., Frost v. Corporation Commission,* 278 U.S. 515, 526–527, 49 S.Ct. 235, 239, 73 L.Ed. 483 (1929); *Stewart v. Waller,* 404 F.Supp. 206, 215 (N.D. Miss.1975), this analysis does not apply in *Northern Pipeline* since the Supreme Court held *only* the jurisdictional grant contained in § 241(a) unconstitutional. The Court did not invalidate § 401(a) or the remainder of the Bankruptcy Reform Act.

Nor does § 404(a), which maintains the old bankruptcy court structure during the transition period, infer that the jurisdictional provisions of the 1898 Act were preserved under the new Act.[7] Section 404(a) merely retains the physical court structure "created under section 2a of the Bankruptcy Act" and does not purport to continue the jurisdictional provisions of § 2a. § 404(a), 92 Stat. 2683. In fact, § 405(b) expressly provides that the jurisdictional provisions of *§ 241(a)* "shall apply to the courts of bankruptcy continued by section 404(a) of this Act." § 405(b), 92 Stat. 2685.

Furthermore, the Supreme Court in *Northern Pipeline* gave absolutely no indication that the jurisdictional grant contained in the 1898 Act was revived by the

---

Bankruptcy Judge Charles A. Anderson of the Southern District of Ohio has, however, concluded that "neither the Bankruptcy Courts nor the District Courts are vested with jurisdiction over the litigation of state law causes of action involving nondebtors in a bankruptcy court unless conferred by a jurisdictional statute enacted by the Congress to supplant 28 U.S.C. § 1471 or the jurisdiction conferred upon the District Court by other statutes." *Winters National Bank & Trust Co. v. Schear Group (In the Matter of Schear Realty & Investment Co.),* Case No. 3–82–01843, Adv. No. 3–82–0491, 25 B.R. 463 at 471 (Bkrtcy.S.D.Ohio 1982).

**6.** This court has concluded that the Supreme Court's decision to apply *Northern Pipeline* prospectively requires this court to continue to exercise § 1471 jurisdiction over any matters or proceedings arising from cases commenced on or prior to December 24, 1982. *Walter E. Heller & Co. v. Matlock Trailer Corp.*, 27 B.R. 311 (Bkrtcy.M.D.Tenn.1983.)

**7.** The Bankruptcy Reform Act was to be phased in during the transition period which extends from October 1, 1979, through March 31, 1984. § 404(b), 92 Stat. 2683.

finding that § 241(a) of the 1978 Act was unconstitutional. Quite to the contrary, a reading of *Northern Pipeline* indicates that the Supreme Court contemplated exactly the opposite result. The Court's imposition of a stay of their decision to afford Congress an opportunity to reconstitute the bankruptcy courts without impairing the interim administration of the bankruptcy laws at least infers the Court believed that, once *Northern Pipeline* became effective, the bankruptcy courts would have no jurisdictional foundation to adjudicate cases filed after *Northern Pipeline. See Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 102 S.Ct. at 2880; *id.* 102 S.Ct. at 2882 (Rehnquist, J. and O'Connor, J., concurring). In addition, the plurality opinion casts grave doubts on the validity of the jurisdictional provision contained in the 1898 Act.[8] This court can only surmise that the Supreme Court would have expanded its analysis of the jurisdictional faults of the 1898 Act if those jurisdictional provisions were in fact reinstituted once § 241(a) was found unconstitutional.

For these reasons, this court must conclude that § 401(a) of the Bankruptcy Reform Act repealed the former 1898 Act and that the repealer provision was not affected by the Supreme Court's subsequent finding in *Northern Pipeline* that the jurisdictional grant of § 241(a) was unconstitutional. *In re Motion to Dismiss: Constitutionality of Jurisdiction of the Bankruptcy Court,* 23 B.R. 334, 343–346 (Bkrtcy.M.D.Ga.1982). *See also* Letters of Frank R. Kennedy, Vern Countryman, Lawrence P. King, William J. Rochelle, Jr., Dean M. Gandy, Richard Levin, Joseph E. Friend and George M. Treister to Representative Peter W. Rodino, Jr., Chairman of the House Judiciary Committee, H.R.Rep. No. 807, *supra,* at 32–49.

■ Lastly, this court finds that the consent of the parties cannot be considered as a source of jurisdiction for the bankruptcy courts. The law of jurisprudence is well established that, where the court lacks subject matter jurisdiction to hear a case, the parties cannot create jurisdiction by agreement or consent. *See, e.g., Insurance Corp. of Ireland, Ltd. v. Compagnie Des Bauxites De Guinea,* —— U.S. ——, —— ——, 102 S.Ct. 2099, 2103–04, 72 L.Ed.2d 492, 500–501 (1982); *California v. La Rue,* 409 U.S. 109, 112 n. 3, 93 S.Ct. 390, 394 n. 3, 34 L.Ed.2d 342 (1972); *Sea-Land Service, Inc. v. International Longshoremen's Association,* 625 F.2d 38, 41 (5th Cir.1980); 5 Wright & Miller, Federal Practice and Procedure § 1350, at 546 (1969).

■ Since this court lacks any direct statutory source of jurisdiction other than § 241(a) of the Bankruptcy Reform Act, the question next arises whether the emergency rule drafted in the Ninth Circuit and eventually adopted by the District Court for the Middle District of Tennessee confers any subject matter jurisdiction on this court. The emergency rule seeks to accomplish one of two purposes. It must either continue jurisdiction in the bankruptcy courts pursuant to the Bankruptcy Reform Act of 1978 or create some form of interim jurisdiction in the bankruptcy courts pending Congressional resolution of the jurisdictional problems raised in *Northern Pipeline.* For a multitude of reasons, this court concludes that the rule cannot under either premise constitutionally bestow jurisdiction on this court. *See Hearings on Omnibus Bankruptcy and Court Reform Legislation before the SubCommittee on Courts of the Senate Comm. on the Judiciary,* 97th Cong., 2d Sess. 2–6 (1982) (statement of Jonathan C. Rose, Assistant Attorney General, Office of Legal Policy).

If the rule attempts to somehow continue jurisdiction under the Bankruptcy Reform

---

**8.** Justice Brennan, writing for the plurality, explained:

"Appellants and Justice WHITE's dissent also rely on the broad powers exercised by the bankruptcy referees immediately before the Bankruptcy Act of 1978 ... But those particular adjunct functions, which represent the culmination of years of gradual expansion of the power and authority of the bankruptcy referee ... have never been explicitly endorsed by this Court." (citations omitted). *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 102 S.Ct. at 2876 n. 31.

Act in cases filed after December 24, 1982, then it is in direct conflict with the Supreme Court's opinion in *Northern Pipeline.* The Court found in *Northern Pipeline* that the Congressional grant of jurisdiction to the bankruptcy courts as encompassed in § 241(a) was unconstitutional in its entirety. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 102 S.Ct. at 2880; *id.,* 102 S.Ct. at 2882 (Rehnquist, J. and O'Connor, J., concurring). Although the Supreme Court did stay the effect of *Northern Pipeline* until December 24, 1982, once the Court determined not to extend the stay the decision became binding law as to any case commenced after the expiration of the stay. Neither the Judicial Council nor the district court can alter the outcome of *Northern Pipeline* by the implementation of a rule.

■ This court further rejects the contention that either the Judicial Council or the district court can create interim jurisdiction in the bankruptcy courts to handle bankruptcy adjudications. The United States Constitution grants only Congress the power to confer jurisdiction upon inferior courts, either through the exercise of its Article I or Article III powers. U.S. Const. art. I, § 8 cl., 9 and art. III, § 1. *See also Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 374, 98 S.Ct. 2396, 2403, 57 L.Ed.2d 274 (1978); *Lockerty v. Phillips,* 319 U.S. 182, 187, 63 S.Ct. 1019, 1022, 87 L.Ed. 1339 (1943); *Kline v. Burke Construction Co.,* 260 U.S. 226, 233–234, 43 S.Ct. 79, 82, 67 L.Ed. 226 (1922); *Graves v. Sneed,* 541 F.2d 159, 161 (6th Cir.1976), *cert. denied* 429 U.S. 1093, 97 S.Ct. 1106, 51 L.Ed.2d 539 (1977); *Jorden v. Metropolitan Utilities District,* 498 F.2d 514, 516 (8th Cir.1974); *Markham v. City of Newport News,* 292 F.2d 711, 713 (4th Cir.1961); *Eastern Federal Corp. v. Wasson,* 525 F.Supp. 241, 243 (D.S.C.1981); *Rompe v. Yablon,* 277 F.Supp. 662, 664 (S.D.N.Y.1967); 1 Moore's Federal Practice ¶ 0.60[2.–3], at 616.1 to 617 (2d ed. 1982); 13 Wright & Miller, Federal Practice and Procedure § 3526, at 113–114 (1975). As the Supreme Court noted in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 102 S.Ct. at 2868 n. 15:

> "The Framers chose to leave *to Congress* the precise role to be played by the lower federal courts in the administration of justice." (emphasis added).

Therefore, to repose jurisdiction in the bankruptcy courts to hear bankruptcy cases filed after the effective date of *Northern Pipeline,* the district court itself must possess jurisdiction over these bankruptcy cases, the Constitution must not prohibit the district court from delegating or transferring its jurisdiction *and* express statutory authority must exist which grants the district court the power to delegate this jurisdiction to an inferior tribunal. The emergency rule as adopted fails to satisfy any of these prerequisites.

■ First, this court finds that the district court lacks any subject matter jurisdiction over bankruptcy matters. The district court clearly does not possess any continuing jurisdiction under 28 U.S.C. § 1471. Although § 1471(a) grants the district courts "original and exclusive jurisdiction" of all bankruptcy adjudications, § 1471(c) provides that the bankruptcy courts "shall exercise all of the jurisdiction conferred" under § 1471(a). 28 U.S.C.A. § 1471(a) and (c) (West Supp.1982). Both the plurality and concurring opinions in *Northern Pipeline* refused to sever the jurisdictional grant in § 1471 between the bankruptcy courts, which the court found unconstitutional as presently constructed, and the district courts. Instead, both opinions unequivocally stated that § 241(a) was unconstitutional *in its entirety.* Justice Brennan expressed these views for the plurality when he wrote:

> "It is clear that, at the least, the new bankruptcy judges cannot constitutionally be vested with jurisdiction to decide this state-law contract claim against Marathon. As part of a comprehensive restructuring of the bankruptcy laws, Congress has vested jurisdiction over this and all matters related to cases under title 11 in a single non-Art. III court, and has done so pursuant to a single statutory grant of jurisdiction. In these circum-

stances we cannot conclude that if Congress were aware that the grant of jurisdiction could not constitutionally encompass this and similar claims, it would simply remove the jurisdiction of the bankruptcy court over these matters, leaving the jurisdictional provision and adjudicatory structure intact with respect to other types of claims, and thus subject to Art. III constitutional challenge on a claim-by-claim basis. Indeed, we note that one of the express purposes of the Act was to ensure adjudication of all claims in a single forum and to avoid the delay and expense of jurisdictional disputes ... Nor can we assume, as THE CHIEF JUSTICE suggests ..., that Congress' choice would be to have this case 'routed to the United States district court of which the bankruptcy court is an adjunct.' We think that it is for Congress to determine the proper manner of restructuring the Bankruptcy Act of 1978 to conform to the requirements of Art. III in the way that will best effectuate the legislative purpose." (citations omitted).

*Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 102 S.Ct. at 2880 n. 40. The two concurring Justices agreed with the plurality's analysis, stating:

"All matters of fact and law in whatever domains of the law to which the parties' dispute may lead are to be resolved by the Bankruptcy Court in the first instance, with only traditional appellate review apparently contemplated by Art. III courts. Acting in this manner the Bankruptcy Court is not an 'adjunct' of either the District Court or the Court of Appeals.

I would, therefore, hold so much of the Bankruptcy Act of 1978 as enables a Bankruptcy Court to entertain and decide Northern's lawsuit over Marathon's objection to be violative of Art. III of the United States Constitution. Because I agree with the plurality that this grant of authority is not readily severable from the remaining grant of authority to Bankruptcy Courts under § 241(a), see *ante,* 102 S.Ct. at 2880 n. 40, I concur in the judgment."

*Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 102 S.Ct. at 2882 (Rehnquist, J. and O'Connor, J., concurring).

■ Nor does the district court possess any jurisdiction over bankruptcy adjudications by virtue of 28 U.S.C. § 1334, which grants district courts "original jurisdiction, exclusive of the courts of the States, of all matters and proceedings in bankruptcy." 28 U.S.C.A. § 1334 (West 1976 & Supp. 1982). While § 238(a) amends § 1334 to provide that the district courts shall only have appellate jurisdiction over bankruptcy courts, this amendment does not take effect until April 1, 1984. *See* § 238(a), 92 Stat. 2667–2668; § 402(b), 92 Stat. 2682. This fact has led some commentators and at least one court to suggest that § 1334 continues original jurisdiction of bankruptcy "matters and proceedings" in the district courts until April 1, 1984. *See, e.g., Prudential Insurance Co. v. Stouffer Corp. (In the Matter of Northland Point Partners),* 26 B.R. 860, 861 (E.D.Mich.1983). Such an interpretation, however, is directly contrary to specific provisions of the Bankruptcy Reform Act. In the Bankruptcy Reform Act, Congress chose to place all subject matter jurisdiction over bankruptcy cases and proceedings in the bankruptcy courts. *See* 28 U.S.C.A. 1471(c) (West Supp.1982). Furthermore, § 405(b) expressly provides that during the transition period § 241(a) shall apply "to the courts of bankruptcy continued by section 404(a) of this Act." § 405(b), 92 Stat. 2685. The term "courts of bankruptcy" in § 405(b) includes district courts.[9] The district

---

**9.** Section 404(a) provides that the "courts of bankruptcy, as defined under section 1(10) of the Bankruptcy Act, created under section 2a of the Bankruptcy Act, and existing on September 30, 1979, shall continue through March 31, 1984, to be the courts of bankruptcy for the purposes of this Act." § 404(a), 92 Stat. 2683. Section 1(10) [11 U.S.C. § 1 (repealed 1978)] specifically states that " '[C]ourts of bankrupt-

courts' jurisdiction under the Bankruptcy Reform Act must therefore be defined exclusively by reference to § 1471. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 445–446, *reprinted in* 1978 U.S.Code Cong. and Ad. News 5787, 6400–6401; S.Rep. No. 989, 95th Cong., 2nd Sess. 153–154 *reprinted in* 1978 U.S.Code Cong. and Ad.News 5787, 5939–5940. *See also In re Motion to Dismiss: Constitutionality of Jurisdiction of the Bankruptcy Court*, 23 B.R. at 345. Since § 1471(c) vests the entirety of the district courts' jurisdiction over bankruptcy adjudications in the bankruptcy courts, the district court simply possesses no subject matter jurisdiction over bankruptcy cases and proceedings.

The logic of this conclusion is also dictated by several other factors. First, the technical language of § 1334 creates serious questions as to the scope of a district court's purported jurisdiction over bankruptcy adjudications arising under the Bankruptcy Reform Act. Section 1334 grants district courts original jurisdiction of "all *matters and proceedings*" in bankruptcy. 28 U.S.C.A. § 1334 (West Supp.1982) (emphasis added). While the terms "matters and proceedings" may appear to be all inclusive, these are in fact terms of art which have limited definitions under the Bankruptcy Reform Act. "Matters" refers to contested matters arising in a bankruptcy case whereas "proceedings" either refers to a defined set of adversary proceedings which may be commenced in connection with a bankruptcy case or, in a broader context, to anything that occurs within a case. *See* Fed.R. Bankr.Pro. 701 & 914; H.R. No. 595, 95th Cong., 1st Sess. 445, *reprinted in* 1978 U.S. Code Cong. & Ad.News 5787, 6400–6401; S.Rep. No. 989, 95th Cong., 2nd Sess. 153–154 *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5939–5940. *See also Official Unsecured Creditors' Committee v. Michaels (In the Matter of Marin Motor Oil, Inc.)*, 689 F.2d 445, 450–451 (3d Cir.1982); *Briney v. Burley*, 11 B.R. 369, 381–384 (Bkrtcy.C.D.Cal.1981). Section 1334 simply does not provide, as § 1471 does, district cy' shall include the United States district

courts with "original and exclusive jurisdiction of all *cases* under title 11." 28 U.S.C. § 1471(a) (West 1979) (emphasis added). Surely, Congress would have amended § 1334 to include this broader language if § 1334 was intended to have any continuing viability after passage of the Bankruptcy Reform Act.

■ Secondly, even assuming that § 1334 conferred subject matter jurisdiction over bankruptcy cases to the district courts, the district courts would still lack authority to issue any orders administering property of the bankruptcy estate, whether the property was within or outside the district court's boundaries. Section 1334's grant of jurisdiction was predicated upon the court's power under § 2a(20) [11 U.S.C. § 11 (repealed 1978)] to exercise jurisdiction over persons or property within their respective territorial limits. When this provision was repealed by the Bankruptcy Reform Act in 1978, Congress gave the *bankruptcy* courts exclusive jurisdiction over all the debtor's property, wherever located, pursuant to § 1471(e). 28 U.S.C.A. § 1471(e) (West Supp.1982). As this court has previously noted, the Supreme Court in *Northern Pipeline* determined that § 241(a), which was codified in part as § 1471(e), is unconstitutional in its entirety. Therefore, with § 2a(20) effectively repealed and § 1471(e) declared unconstitutional and of no effect, the district courts, even if possessing subject matter jurisdiction, have no authority to administer or distribute property of the bankruptcy estate. Until such time as Congress establishes jurisdiction in a federal court over property of a bankrupt estate, this court can only conclude that the district court has no power to control such property.

Finally, the Bankruptcy Reform Act continues the administration of bankruptcy cases in the United States Bankruptcy Clerk's office, an entity entirely separate and distinct from the United States District Clerk's office. *See* § 404(e), 92 Stat. 2685. The bifurcation of the administration of bankruptcy petitions from the court which would ultimately handle these adjudications courts."

would result in a bureaucratic nightmare. Such a chaotic outcome clearly could not have been intended by Congress when they enacted the Bankruptcy Reform Act.

■ In conclusion, a reading of § 405(b), 1334 and 1471 clearly reveals that not only was § 1471 intended to be the sole source defining where bankruptcy jurisdiction resides but also that § 1334 is blatantly irreconcilable with both § 405(b) and § 1471. Therefore, although repeal by implication is not favored, no other reasonable conclusion can be reached except that § 1334 was implicitly repealed by Congress' enactment of the Bankruptcy Reform Act.[10] *See, e.g., Kremer v. Chemical Construction Corp.,* —— U.S. ——, ——, 102 S.Ct. 1883, 1890, 72 L.Ed.2d 262, 271–272 (1982); *Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 154, 96 S.Ct. 1989, 1993, 48 L.Ed.2d 540 (1976); *Posadas v. National City Bank,* 296 U.S. 497, 503, 56 S.Ct. 349, 352, 80 L.Ed. 351 (1936). *See generally In re Wolf,* Bankr.L. Rep. (C.C.H.) ¶ 67,947, at 78,879–78,880 (D.Mass.1981) (district court refused to accept original jurisdiction of a motion for declaratory judgment in a bankruptcy proceeding pursuant to 28 U.S.C. § 1334 on the basis that the party requesting the motion cannot bypass the appellate procedures to the district court set forth in the Bankruptcy Reform Act).

This analysis is consistent with the Supreme Court's opinion in *Northern Pipeline.* The plurality and concurring opinions each recognize that § 241(a), although placing jurisdiction over bankruptcy adjudications in the district courts, designated the bankruptcy courts as the "ultimate repository" of the Bankruptcy Reform Act's broad jurisdictional grant. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 102 S.Ct. at 2862 n. 3; *id* 102 S.Ct. at 2882 (Rehnquist, J. and O'Connor, J. concurring). Furthermore, both the plurality and concurrence refused to sever the § 241(a) jurisdictional grant between the bankruptcy and district courts. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 102 S.Ct. at 2880 n. 40; *id* 102 S.Ct. at 2882 (Rehnquist, J. and O'Connor, J., concurring). Instead, both opinions opted to stay the *Northern Pipeline* decision in order to afford Congress an opportunity to restructure the jurisdictional foundation of the Bankruptcy Reform Act. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 102 S.Ct. at 2880 n. 40; *id* 102 S.Ct. at 2882 (Rehnquist, J. and O'Connor, J., concurring). This court finds it improbable that the Supreme Court would have imposed this stay to permit Congress to restructure the jurisdictional foundation of the 1978 Bankruptcy Reform Act if the district courts did already possess jurisdiction over bankruptcy cases pursuant to 28 U.S.C. § 1334.[11]

10. For all of these reasons, this court cannot accept Judge DeMascio's interpretation that Congress "purposely included" § 1334 "to satisfy its stated concern over the constitutionality of the broad jurisdictional grant afforded to bankruptcy judges under the act." *Prudential Insurance Co. v. Stouffer Corp. (In the Matter of Northland Point Partners),* 26 B.R. 860, 861. Not only is the legislative history completely devoid of any explanation as to why Congress left § 1334 intact during the transition period, but this court finds it incredible to assume that Congress, without ever directly mentioning the fact, left § 1334 in place with the knowing and willing presupposition that § 1334 would provide a safety valve measure when § 241(a) was found unconstitutional. This assumption is especially unlikely in view of Congress' decision to repeal § 1334 on April 1, 1984. If Congress actually intended § 1334 to be a stop gap device, then § 1334 would not have been repealed. This interpretation simply reads too much into the Congressional concern over the constitutionality of the Bankruptcy Reform Act. In any event, Judge DeMascio's analysis is in direct contravention with § 405(b) which makes § 241(a) the *exclusive* basis of jurisdiction for all courts of bankruptcy, including the district courts, during the transition period. *See* § 405(b), 92 Stat. 2685.

11. The court suggests that, if § 1334 was still viable, the outcome in *Northern Pipeline* would have been completely different. The Supreme Court's entire discussion of § 241(a) would necessarily have included an analysis of the ramifications of § 1334. Indeed, instead of affirming the district court's opinion *dismissing* the case, the Court would have remanded the case to the district court for trial as a "matter or proceeding" within the district court's § 1334 jurisdiction or, at least, remanded the

For these same reasons, this court also concludes that the district courts do not possess bankruptcy jurisdiction as a consequence of their federal question jurisdiction, which is defined in 28 U.S.C.A. § 1331 (West Supp.1982) to include all civil actions "arising under the ... laws ... of the United States." In addition, the court would note the well established maxim of statutory construction that a specific grant of power, such as that contained in § 1471, prevails over the broader language of § 1331. *See, e.g., Busic v. United States,* 446 U.S. 398, 406, 100 S.Ct. 1747, 1752, 64 L.Ed.2d 381 (1980); *Essenfeld v. Commissioner,* 311 F.2d 208, 210 (2d Cir.1962); *Cornelius v. Benevolent Protective Order of the Elks,* 382 F.Supp. 1182, 1201 (D.Conn.1974); *McClellan v. Shapiro,* 315 F.Supp. 484, 487 n. 7 (D.Conn.1970). And, even assuming § 1331 did confer jurisdiction over bankruptcy cases to district courts, this grant of jurisdiction would not be exclusive. Federal question jurisdiction under § 1331 is therefore not sufficiently broad to encompass numerous matters, involving essentially no federal question whatsoever, which traditionally have been within the jurisdiction of a federal bankruptcy court. *See Williams v. Austrian,* 331 U.S. 642, 657–658, 67 S.Ct. 1443, 1450, 91 L.Ed. 1718 (1947); *Horvath v. Pitney,* 51 F.Supp. 886, 887 (D.N.J.1943).

In sum, until Congress clearly sets forth where bankruptcy jurisdiction should reside in the aftermath of *Northern Pipeline,* no jurisdiction exists in either the bankruptcy or the district courts to hear cases arising under the Bankruptcy Reform Act which are filed after December 24, 1982. As Bankruptcy Judge Norton for the Northern District of Georgia recently explained, "[I]n the absence of clear constitutional or federal statutory jurisdiction, jurisdiction must be denied by federal courts." *In re Motion to Dismiss: Constitutionality of Jurisdiction of the Bankruptcy Court,* 23 B.R. at 346. *See also Grace v. American*

case to the district court to determine if jurisdiction existed under § 1334. *See Marathon Pipeline Co. v. Northern Pipeline Construction*

*Central Insurance Co.,* 109 U.S. 278, 283, 3 S.Ct. 207, 209, 27 L.Ed. 932 (1883); *Young Properties Corp. v. United Equity Corp.,* 534 F.2d 847, 849–850 (9th Cir.1976); *City of Lawton v. Chapman,* 257 F.2d 601, 603 (10th Cir.1958). It is elementary that, if the district court lacks jurisdiction itself, then it cannot by implementation of a rule create jurisdiction in the bankruptcy courts. The United States Constitution confers the power to create jurisdiction exclusively upon Congress. U.S. Const. art. I, § 8, cl. 9 and art. III, § 1. *See, e.g., Owen Equipment & Erection Co. v. Kroger,* 437 U.S. at 374, 98 S.Ct. at 2403; *Lockerty v. Phillips,* 319 U.S. at 187, 63 S.Ct. at 1022; *Kline v. Burke Construction Co.,* 260 U.S. at 233–234, 43 S.Ct. at 82; 1 Moore's Federal Practice ¶ 0.60[2.–3] at 616.1–617 (2d ed. 1982).

In any event, even assuming that the district court does possess subject matter jurisdiction over bankruptcy cases, such a broad grant of jurisdiction as encompassed in the rule cannot constitutionally be delegated to this court. The Supreme Court in *Northern Pipeline* expressly refused to validate this type of delegation of judicial authority. Indeed, the plurality termed the bankruptcy court's exercise of jurisdiction as adjuncts of the district courts a mere facade. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 102 S.Ct. at 2879. Although the concurring opinion was restricted to the more limited holding that only proceedings involving facts similar to the *Northern Pipeline* lawsuit must be heard by an Article III judge, both opinions refused to condone a jurisdictional structure whereby the entirety of bankruptcy jurisdiction was vested solely in Article I bankruptcy courts and any "Article III controversy" which arose was simply routed to the district courts. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 102 S.Ct. at 2880, n. 40; *id* 102 S.Ct. at 2882 (Rehnquist, J. and O'Connor, J., concurring).

*Co.,* 12 B.R. 946 (D.C.D.Minn.1981), *aff'd* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598.

The emergency rule implements the exact system which the Supreme Court declined to sanction. The rule refers all "cases under Title 11 and all civil proceedings arising under Title 11 or arising in or related to cases under Title 11" to the bankruptcy judges of this district. Adm.Order No. 28(c)(1), at 3. The rule thus contemplates that these adjudications shall be heard in the first instance by the bankruptcy judge. Furthermore, although the rule provides that in "related proceedings," unless the parties agree otherwise, the bankruptcy judge may not enter a judgment or dispositive order without the approval of the district judge, the list of matters which are not considered "related proceedings" include virtually every proceeding that could occur under the operation of the bankruptcy laws.[12] Adm.Order No. 28(d)(3)(A) & (B), at 5–6. And, even though on appeal to the district court the determinations of the bankruptcy court are given no deference, the review on appeal does not require a *de novo* hearing by the district court judge. Adm.Order No. 28(e)(2)(B), at 7. In short, even a cursory examination of the rule leads to the inescapable conclusion that the district court has, in disregard of the *Northern Pipeline* decision, abdicated its purported jurisdiction over bankruptcy cases and proceedings to a non-Article III court. The district court's broad delegation of authority to this court to formulate binding judicial decisions in bankruptcy adjudications cannot be constitutionally sustained under Article III and the corollary doctrine of separation of powers. *See Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 102 S.Ct. at 2874–2880; *United States v. Raddatz*, 447 U.S. 667, 682, 100 S.Ct.

2406, 2415, 65 L.Ed.2d 424 (1980); *Mathews v. Weber*, 423 U.S. 261, 271, 96 S.Ct. 549, 554, 46 L.Ed.2d 483 (1976); *Dye v. Cowan*, 472 F.2d 1206, 1206–1207 n. 1 (6th Cir.1972); *TPO, Inc. v. McMillen*, 460 F.2d 348, 359 (7th Cir.1972).

Finally, even if the district court possesses jurisdiction over bankruptcy adjudications and could constitutionally delegate this jurisdiction, the district court lacks statutory authority to confer such powers on this court. Although the administrative order adopting the emergency rule in this district is silent as to the statutory justification for the implementation of this rule, several commentators have suggested a number of sources to support promulgation of the rule. These include (1) the Judicial Council's power pursuant to 28 U.S.C. § 332(d) to make orders necessary for the administration of justice within each circuit, (2) the district court's authority to establish local rules under either 28 U.S.C. § 2071 or Bankruptcy Rule 927, (3) the district court's reference of matters to special masters pursuant to Federal Rule of Civil Procedure 53 or Bankruptcy Rule 513, (4) the district court's exercise of its statutory bankruptcy powers under 28 U.S.C. § 1334, and (5) the bankruptcy court's ability under 11 U.S.C. § 105 (West 1979) to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." None of these provisions, however, even indirectly purports to give either the Judicial Council or the district courts themselves the power to create subject matter jurisdiction in bankruptcy courts.

---

**12.** Related proceedings do not include the following:

"... contested and uncontested matters concerning the administration of the estate; allowance of and objection to claims against the estate; counterclaims by the estate in whatever amount against persons filing claims against the estate; orders in respect to obtaining credit; orders to turn over property of the estate; proceedings to set aside preferences and fraudulent conveyance; proceedings in respect to lifting of the automatic stay; proceedings to determine discharge-ability of particular debts; proceedings to object to the discharge; proceedings in respect to the confirmation of plans; orders approving the sale of property where not arising from proceedings resulting from claims brought by the estate against parties who have not filed claims against the estate; and similar matters. *A proceeding is not a related proceeding merely because the outcome will be affected by state law.*" (emphasis added).

Adm. Order No. 28(d)(3)(A), at 5.

The Judicial Council attempts to propound this emergency rule by virtue of 28 U.S.C.A. § 332(d) (West Supp.1982), which provides in relevant part as follows:

"(d)(1) Each judicial council shall make all necessary and appropriate orders for the effective and expeditious administration of justice within its circuit. . .

(2) All judicial officers and employees of the circuit shall promptly carry into effect all orders of the judicial council."

■ Although the Supreme Court has observed in *Chandler v. Judicial Council,* 398 U.S. 74, 85 n. 6, 90 S.Ct. 1648, 1654 n. 6, 26 L.Ed.2d 100 (1970), that "§ 332 is not a model of clarity in terms of the scope of the judicial councils' powers," § 332 certainly cannot stand for the proposition that the Judicial Council may confer subject matter jurisdiction upon an inferior federal court in direct contravention of the United States Constitution. Such an exercise of authority usurps the powers that the Constitution has placed solely in the legislative branch and goes well beyond the Judicial Council's primary role as supervisor and manager of the judicial work of the circuit. *See Chandler v. Judicial Council,* 398 U.S. at 86 n. 7, 90 S.Ct. at 1654 n. 7; Kohn, *The Authority of the Circuit Judicial Councils: Separation of Powers in the Courts of Appeals,* 5 Seton Hall L.Rev. 815, 826, 831–832 (1974); Address by United States District Judge John W. Oliver at the Annual Meeting of the National Conference of Federal Trial Judges, American Bar Association, Honolulu, Hawaii (August, 1974), *reprinted in* 64 F.R.D. 201, 202–206.

■ Nor can this rule be implemented by the district courts as a local rule of court pursuant to either 28 U.S.C. § 2071 or Bankruptcy Rule 927.[13] The law is well

settled that no federal court, not even the United States Supreme Court pursuant to its power under 28 U.S.C. § 2075 to prescribe rules in bankruptcy adjudications, may enlarge the statutory subject matter jurisdiction of federal courts. As the United States Supreme Court definitively explained in *United States v. Sherwood,* 312 U.S. 584, 589–590, 61 S.Ct. 767, 771, 85 L.Ed. 1058 (1941):

"An authority conferred upon a court to make rules of procedure for the exercise of its jurisdiction is not an authority to enlarge that jurisdiction and the Act of June 19, 1934 . . ., authorizing this Court to prescribe rules of procedure in civil actions gave it no authority to modify, abridge or enlarge the substantive rights of litigants or to enlarge or diminish the jurisdiction of federal courts." (citations omitted).

*Accord Nissho American Corp. v. Humphreys (In the Matter of Behring and Behring),* 445 F.2d 1096, 1100 (5th Cir.1971); *Concord Casualty & Surety Co. v. United States,* 69 F.2d 78, 80 (2d Cir.1934); *Clymer v. United States,* 38 F.2d 581, 582 (10th Cir.1930); *Gillman v. Blue Cross and Blue Shield (In re Park East Corp.),* 470 F.Supp. 147, 151 (S.D.N.Y.1979); *Johnson v. E.C. Ernst, Inc.,* 2 B.R. 757, 760 (S.D.N.Y.1980). This basic concept of jurisprudence is reaffirmed in the Supreme Court's enactment of Bankruptcy Rule 928, which expressly provides that "[T]hese rules shall not be construed to extend or limit the jurisdiction of courts of bankruptcy over subject matter." Fed.R.Bankr.P. 928.

Furthermore, the district court's adoption of the emergency rule as a local rule would contravene the provisions of both 28 U.S.C. § 2071 and Bankruptcy Rule 927 which prohibit the implementation of any local rule

---

**13.** 28 U.S.C.A. § 2071 (Law.Co-op.1977) provides:

"The Supreme Court and all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business. Such rules shall be consistent with Acts of Congress and rules of practice and procedure prescribed by the Supreme Court."

Fed.R.Bankr.P. 927 provides in relevant part as follows:

"Each district court by action of a majority of the judges thereof may from time to time make and amend rules governing practice and procedure under the Act not inconsistent with these rules. . . . In all cases not provided for by rule, the district court may regulate its practice in any manner not inconsistent with these rules."

**900**

which is inconsistent with the rules of practice and procedure prescribed by the Supreme Court. 28 U.S.C.A. § 2071 (West 1959); Fed.R.Bankr.P. 927. The emergency rule as formulated is inconsistent with several of the Rules of Bankruptcy Procedure adopted by the Supreme Court under 28 U.S.C. § 2075. These inconsistencies include, but are not limited to, the following: (1) the rule gives no deference to the findings of the bankruptcy judge whereas Bankruptcy Rules 752 and 810 specifically provide that the district court shall accept the bankruptcy court's findings of fact unless they are clearly erroneous, *compare* Adm.Order No. 28(e)(2)(B) at 7 *with* Fed.R. Bankr.P. 752(a) & 810; (2) the rule's requirement that a bankruptcy judge must submit a proposed judgment or order to the district judge for approval in all related proceedings negates the provision in Bankruptcy Rule 921 that a bankruptcy judge's judgment becomes effective once entered, *compare* Adm.Order No. 28(d)(3)(B), at 6 *with* Fed.R.Bankr.P. 921(a); and (3) the emergency rule's prohibition of jury trials in the bankruptcy court contravenes both Bankruptcy Rules 115(b) and 409(c) which permit either party to demand a trial by jury on any issue triable of right by a jury, *compare* Adm.Order No. 28(d)(1)(D), at 4 *with* Fed.R.Bankr.P. 115(b) & 409(c).

The emergency rule also conflicts with express statutory provisions of the Bankruptcy Reform Act of 1978. For instance, the appellate process set forth in § 405(c), which was not affected by the *Northern Pipeline* decision, is drastically altered under the emergency rule, *compare* Adm.Order No. 28(e), at 6–8 *with* § 405(c), 92 Stat. 2685, and the emergency rule's provision for automatic referral of all cases under Title 11 to the bankruptcy judges in this district is totally inconsistent with § 921(b) of the Code which provides that the chief judge of the court of appeals for the circuit embracing the district in which a municipal bankruptcy petition under Chapter 9 is commenced shall designate the bankruptcy judges to conduct the case, *compare* Adm. Order No. 28(c)(1), at 3 *with* 11 U.S.C.A. § 921(c) (West 1979).

■■■ This court also rejects the proposition that the emergency rule can be validated as the mere referral of bankruptcy adjudications to bankruptcy judges who would serve as special masters to the district courts pursuant to either Federal Rule of Civil Procedure 53 or Federal Rule of Bankruptcy Procedure 513.[14] The case law discussing the appointment of a special master by a district judge conclusively reveals that the appointment of a master is the exception, not the rule, and that the court should only appoint a master to assist, not displace, the district judge in the performance of his duties. *La Buy v. Howes Leather Co.,* 352 U.S. 249, 256–259, 77 S.Ct. 309, 313, 1 L.Ed.2d 290 (1957); *In the Matter of Peterson,* 253 U.S. 300, 312–313, 40 S.Ct. 543, 547, 64 L.Ed. 919 (1920); *Bradshaw v. Thompson,* 454 F.2d 75, 80 (6th Cir.1972); 9 Wright & Miller, Federal Practice and Procedure § 2601, at 776–777 (1971). Rule 53 itself contemplates that a reference to a master "shall be the exception and not the rule" and that "in actions to be tried without a jury, save in matters of account and of difficult computation of damages, a reference shall be made only upon a showing that some exceptional condition requires it." Fed.R.Civ.P. 53(b). These authorities are

---

**14.** Fed.R.Civ.P. 53 provides in pertinent part:

"(a) *Appointment and Compensation.* Each district court with the concurrence of a majority of all the judges thereof may appoint one or more standing masters for its district, and the court in which any action is pending may appoint a special master therein. As used in these rules the word 'master' includes a referee, an auditor, an examiner, a commissioner, and an assessor...

(b) *Reference.* A reference to a master shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury, save in matters of account and of difficult computation of damages, a reference shall be made only upon a showing that some exceptional condition requires it."

Fed.R.Bankr.P. 513 provides:

"If a reference is made in a bankruptcy case by a judge to a special master, the Federal Rules of Civil Procedure applicable to masters apply."

sufficient to demonstrate that the district courts cannot abdicate whatever subject matter jurisdiction they possess over bankruptcy cases and proceedings to "special master" bankruptcy judges.

 Lastly, this court finds that neither 28 U.S.C. § 1334 nor 11 U.S.C. § 105 give even the slightest indication that Congress intended to imply in these general grants of power that a district court could delegate its subject matter jurisdiction to another federal tribunal. Section 1334 grants district courts *jurisdiction* over "all matters and proceedings in bankruptcy." 28 U.S. C.A. § 1334 (West Supp.1982). Section 1334 does not grant district courts the *authority to delegate* this jurisdiction to other federal courts. In any event, the emergency rule purports to grant bankruptcy courts jurisdiction over both Title 11 cases and all civil proceedings arising in or related to cases under Title 11. Adm.Order No. 28(c)(1), at 3. Section 1334 apparently provides district courts with no jurisdiction over Title 11 cases themselves and clearly provides the district courts with no jurisdiction over proceedings "arising in or related to" cases under Title 11.

As for § 105, the specific language of this section confers power solely to the "bankruptcy court," not the district court. Furthermore, § 105 does not grant the bankruptcy court the authority to implement a rule but only allows the court to "issue any *order, process,* or *judgment* that is necessary or appropriate to carry out the provisions of this title." (emphasis added). 11 U.S.C.A. § 105 (West 1979). In any event, the general provisions of § 105 are insufficient to support a finding that Congress intended in § 105 to confer on district courts the power to delegate their entire subject matter jurisdiction over bankruptcy· adjudications to other federal tribunals. Indeed, to accept this reasoning would allow the bankruptcy courts through this same grant to refer any and all bankruptcy adjudications to any person they so chose to designate.

 In sum, this court finds that the Supreme Court's decision in *Northern Pipeline* left this court without any subject matter jurisdiction to hear any bankruptcy petition commenced after December 24, 1982, and that the adoption of the emergency rule by the United States District Court for Middle Tennessee is patently unconstitutional and cannot confer subject matter jurisdiction to this court.[15] A court lacking subject matter jurisdiction over a case or controversy has no alternative but to dismiss that case.[16] *Ex Parte McCardle,* 74 U.S. (7 Wall.) 506, 514–515, 19 L.Ed. 264 (1869); *Thomas v. James,* 661 F.2d 67, 68 n.

---

**15.** Even if this court were to find that the district courts could constitutionally promulgate a rule conferring jurisdiction upon the bankruptcy courts, the fact that the emergency rule could be divergently applied in the various district courts might very well cause the rule to be violative of the constitutional requirement that Congress shall adopt uniform national bankruptcy laws. U.S. Const. art. I, § 8, cl. 4. *See also Hanover National Bank v. Moyses,* 186 U.S. 181, 188, 22 S.Ct. 857, 860, 46 L.Ed. 1113 (1902); *Blanchette v. Connecticut General Insurance Corps. (In re Regional Rail Reorganization Act Cases),* 419 U.S. 102, 160, 95 S.Ct. 335, 366, 42 L.Ed.2d 320 (1974). Indeed, a recent publication indicated that, of the two model rules suggested by the Judicial Conference, numerous courts have adopted one or the other and several courts have modified or refined one of the two model rules. "Courts Adopt Interim Bankruptcy Rules," 15 The Third Branch 1 (January 1983).

**16.** Although Bankruptcy rule 915(a) does require a party to file an objection to jurisdiction by a timely motion or answer, this provision is inapplicable to motions to dismiss for lack of subject matter jurisdiction since such an objection may be raised at any time. *See, e.g., Driscoll v. New Orleans Steamboat Co.,* 633 F.2d 1158, 1161 (5th Cir.1981); *Amfac Mortgage Corp. v. Arizona Mall of Tempe, Inc.,* 583 F.2d 426, 430 n. 5 (9th Cir.1978); *Mortensen v. First Federal Savings and Loan Association,* 549 F.2d 884, 891–892 (3rd Cir.1977); *United States v. Mississippi Valley Barge Line Co.,* 285 F.2d 381, 387 (8th Cir.1960); *In re Dreske Greenway Trust,* 14 B.R. 618, 619 (Bkrtcy.E.D. Wis.1981); 5 Wright & Miller, Federal Practice and Procedure § 1350, at 544 (1969). Rule 915 in fact contemplates such a result. Rule 915 is by its terms subject to the provisions of Bankruptcy Rule 928, which expressly provides that "[T]hese rules shall not be construed to extend or limit the jurisdiction of courts of bankruptcy over subject matter." Fed.R.Bankr.P. 928.

3 (5th Cir.1981); *Stanley v. Central Intelligence Agency,* 639 F.2d 1146, 1157 (5th Cir. 1981); *International Video Corp. v. Ampex Corp.,* 484 F.2d 634, 639 (9th Cir.1973); *Stewart v. United States,* 199 F.2d 517, 519 (7th Cir.1952); *Trinanes v. Schulte,* 311 F.Supp. 812, 813 (S.D.N.Y.1970).

This court is aware that this decision will effectively leave debtors with no court in which to now file a petition under the Bankruptcy Reform Act. This court also realizes that its position in criticizing an administrative rule entered by those district judges who appointed them and promulgated by the Judicial Council which can remove them, places the court in an uncomfortable and even precarious posture. In light of these considerations, one respected and learned bankruptcy jurist has recently suggested that "it would be an act of judicial anarchy for this court not to follow a rule adopted unanimously by the judges of its appellate court" and "[d]isobedience of the rule would be a dereliction of duty." *Docter v. Gleicher (In re Stillman),* 26 B.R. 834, 837 (Bkrtcy.D.Md.1983). However, this court, in recalling the oath taken when assuming office, feels compelled to follow the teachings of the United States Constitution as interpreted by the United States Supreme Court. The court therefore cannot condone the application of this administrative rule which it deems patently unconstitutional and in direct conflict with the rulings of the Supreme Court.

Accordingly, we conclude that this court possesses subject matter jurisdiction over only those Chapter 13 cases filed on or before December 24, 1982. As to those cases, the court ORDERS, ADJUDGES and DECREES that the trustee continue to distribute funds in accordance with the provisions of Chapter 13 of the Bankruptcy Reform Act of 1978. As for cases commenced subsequent to December 24, 1982, this court lacks subject matter jurisdiction and can therefore issue no order to compel the Chapter 13 trustee to distribute funds in or administer those cases.

IT IS, THEREFORE, SO ORDERED.

## APPENDIX

## ORDER

The following rule is hereby adopted by the United States District Court for the Middle District of Tennessee:

## RULE

### (a) *Emergency Resolution*

The purpose of this rule is to convey to the bankruptcy judges of this district authority to act in bankruptcy cases and proceedings until the Congress enacts appropriate remedial legislation in response to the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line, Co.,* —— U.S. ——, 102 S.Ct. 2858 [73 L.Ed.2d 598] (1982), or until March 31, 1984, whichever first occurs.

The judges of the district court find that exceptional circumstances exist. These circumstances include: (1) the unanticipated unconstitutionality of the grant of power to bankruptcy judges in section 241(a) of Public Law 95–598; (2) the clear intent of Congress to refer bankruptcy matters to bankruptcy judges; (3) the specialized expertise necessary to the determination of bankruptcy matters; and (4) the administrative difficulty of the district courts' assuming the existing bankruptcy caseload on short notice.

Therefore, the orderly conduct of the business of the court requires this referral of bankruptcy cases to the bankruptcy judges.

### (b) *Filing of bankruptcy papers*

The bankruptcy court constituted by § 404 of the Public Law 95–598 shall continue to be known as the United States Bankruptcy Court of this district. The Clerk of the Bankruptcy Court is hereby designated to maintain all files in bankruptcy cases and adversary proceedings. All papers in cases or proceedings arising under or related to Title 11 shall be filed with the Clerk of the Bankruptcy Court regardless

of whether the case or proceeding is before a bankruptcy judge or a judge of the district court, except that a judgment by the district judge shall be filed in accordance with Rule 921 of the Bankruptcy Rules.

(c) *Reference to Bankruptcy Judges*

(1) All cases under Title 11 and all civil proceedings arising under Title 11 or arising in or related to cases under Title 11 are referred to the bankruptcy judges of this district.

(2) The reference to a bankruptcy judge may be withdrawn by the district court at any time on its own motion or on timely motion by a party. A motion for withdrawal of reference shall not stay any bankruptcy matter pending before a bankruptcy judge unless a specific stay is issued by the district court. If a reference is withdrawn, the district court may retain the entire matter, may refer part of the matter back to the bankruptcy judge or may refer the entire matter back to the bankruptcy judge with instructions specifying the powers and functions that the bankruptcy judge may exercise. Any matter in which the reference is withdrawn shall be reassigned to a district judge in accordance with the court's usual system for assigning civil cases.

(3) Referred cases and proceedings may be transferred in whole or in part between bankruptcy judges within the district without approval of a district judge.

(d) *Powers of Bankruptcy Judges*

(1) The bankruptcy judges may perform in referred bankruptcy cases and proceedings all acts and duties necessary for the handling of those cases and proceedings except that the bankruptcy judges may not conduct:

(A) a proceeding to enjoin a court;

(B) a proceeding to punish a criminal contempt—

(i) not committed in the bankruptcy judge's actual presence; or

(ii) warranting a punishment of imprisonment;

(C) an appeal from a judgment, order, decree, or decision of a United States bankruptcy judge; or

(D) jury trials.

Those matters which may not be performed by a bankruptcy judge shall be transferred to a district judge.

(2) Except as provided in (d)(3), orders and judgments of bankruptcy judges shall be effective upon entry by the Clerk of the Bankruptcy Court, unless stayed by the bankruptcy judge or a district judge.

(3)(A) Related proceedings are those civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or a state court. Related proceedings include, but are not limited to, claims brought by the estate against parties who have not filed claims against the estate. Related proceedings do not include: contested and uncontested matters concerning the administration of the estate; allowance of and objection to claims against the estate; counterclaims by the estate in whatever amount against persons filing claims against the estate; orders in respect to obtaining credit; orders to turn over property of the estate; proceedings to set aside preferences and fraudulent conveyance; proceedings in respect to lifting of the automatic stay; proceedings to determine dischargeability of particular debts; proceedings to object to the discharge; proceedings in respect to the confirmation of plans; orders approving the sale of property where not arising from proceedings resulting from claims brought by the estate against parties who have not filed claims against the estate; and similar matters. A proceeding is not a related proceeding merely because the outcome will be affected by state law.

(B) In related proceedings the bankruptcy judge may not enter a judgment or dispositive order, but shall submit findings, conclusions, and a proposed judgment or order to the district judge, unless the parties to the proceeding consent to entry of the judgment or order by the bankruptcy judge.

(e) *District Court Review*

(1) A notice of appeal from a final order or judgment or proposed order or judgment of a bankruptcy judge or an application for leave to appeal an interlocutory order of a bankruptcy judge, shall be filed within 10 days of the date of entry of the judgment or order or of the lodgment of the proposed judgment or order. As modified by sections (e) 2A and B of this rule, the procedures set forth in Part VIII of the Bankruptcy Rules apply to appeals of bankruptcy judges' judgments and orders and the procedures set forth in Bankruptcy Interim Rule 8004 apply to applications for leave to appeal interlocutory orders of bankruptcy judges. Modification by the district judge or the bankruptcy judge of time for appeal is governed by Rule 802 of the Bankruptcy Rules.

(2)(A) A district judge shall review:

(i) an order or judgment entered under paragraph (d)(2) if a timely notice of appeal has been filed or if a timely application for leave to appeal has been granted;

(ii) an order or judgment entered under paragraph (d)(2) if the bankruptcy judge certifies that circumstances require that the order or judgment be approved by a district judge, whether or not the matter was controverted before the bankruptcy judge or any notice of appeal or application for leave to appeal was filed; and

(iii) a proposed order or judgment lodged under paragraph (d)(3), whether or not any notice of appeal or application for leave to appeal has been filed.

(B) In conducting review, the district judge may hold a hearing and may receive such evidence as appropriate and may accept, reject, or modify, in whole or in part, the order or judgment of the bankruptcy judge, and need give no deference to the findings of the bankruptcy judge. At the conclusion of the review, the district judge shall enter an appropriate order or judgment.

(3) When the bankruptcy judge certifies that circumstances require immediate review by a district judge of any matter subject to review under paragraph (d)(2), the district judge shall review the matter and enter an order or judgment as soon as possible.

(4) It shall be the burden of the parties to raise the issue of whether any proceeding is a related proceeding prior to the time of the entry of the order of judgment of the district judge after review.

(f) *Local Rules*

In proceedings before a bankruptcy judge, the local rules of the bankruptcy court shall apply. In proceedings before a judge of the district court, the local rules of the district court shall apply.

(g) *Bankruptcy Rules and Title IV of Public Law 95–598*

Courts of bankruptcy and procedure in bankruptcy shall continue to be governed by Title IV of Public Law 95–598 as amended and by the bankruptcy rules prescribed by the Supreme Court of the United States pursuant to 28 U.S.C. § 2075 and limited by Sec. 405(d) of the Act, to the extent that such Title and Rules are not inconsistent with the holding of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* — U.S. ——, 102 S.Ct. 2858 [73 L.Ed.2d 598] (1982).

(h) *Effective Date and Pending Cases*

This rule shall become effective December 25, 1982, and shall apply to all bankruptcy cases and proceedings not governed by the Bankruptcy Act of 1898 as amended, and filed on or after October 1, 1979. Any bankruptcy matters pending before a bankruptcy judge on December 25, 1982, shall be deemed referred to that judge.

It is so ORDERED.

(s) L. Clure Morton
L. CLURE MORTON
Chief U.S. District Judge
(s) Thomas A. Wiseman, Jr.
THOMAS A. WISEMAN, JR.
U.S. District Judge
(s) John T. Nixon
JOHN T. NIXON
U.S. District Judge